**HASSINE, Victor, Fox, Aaron, Johnson, David, Appellants,**

**v.**

**JEFFES, Glenn, Commissioner of Corrections, Zimmerman, Charles, Superintendent of Graterford Prison, Stachelek, Thomas, Deputy Superintendent of Treatment, Vaughn, Donald, Deputy Superintendent of Security, Individually and in their official capacities.**

No. 87–1369.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1987.

Decided April 29, 1988.

Angus R. Love (argued), Montgomery County Legal Aid, Norristown, Pa., for appellants.

David M. Donaldson (argued), Sr. Deputy Atty. Gen., Philadelphia, Pa., for appellees.

Before WEIS *, HIGGINBOTHAM and ROSENN, Circuit Judges.

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from the judgment of the district court in an action, brought pursuant to 42 U.S.C. §§ 1983 and 1985 (1982), challenging the conditions of confinement at the State Correctional Institute at Graterford, Pennsylvania ("Graterford" or "the prison"). The district court found that the conditions at the prison did not result in a deprivation of basic needs in violation of the eighth amendment's proscription of cruel and unusual punishment. The district court, however, limited the scope of its factual findings to the individu-

al claims of the plaintiff-appellants. It circumscribed its inquiry in this manner because it previously had determined that because the plaintiff-appellants had failed to satisfy the requirements of Fed.R.Civ.P. 23, certification of their suit as a class action was unwarranted. Accordingly, the district court did not adjudicate claims that the plaintiff-appellants had sought to raise on behalf of the class of Graterford inmates.

We will not disturb the district court's findings with regard to the individual claims of the appellants. We will, however, vacate its order denying appellants' motion for class certification. In our view, the appellants have demonstrated that the claims asserted on behalf of the class meet the requisites of Rule 23 and, for that reason, they are entitled to adjudication of those contentions. We therefore will remand this matter to the district court for entry of an order granting the motion for class certification, and adjudication of the class's claims.

### I.

Appellants Victor Hassine, David Johnson and Aaron Fox ("the complainants") are inmates at Graterford prison. In February 1984, they filed an action against Glen Jeffes, Commissioner of the Pennsylvania Department of Corrections, Charles Zimmerman, Superintendent of Graterford, Thomas Stachelek, Deputy Superintendent at Graterford in charge of treatment services, and Donald Vaughn, Deputy Superintendent at Graterford in charge of security (collectively "Graterford Administration" or "the Administration").

The complainants sought relief from the deteriorated conditions at Graterford, which they attributed substantially to overcrowding at the facility. They asserted, without contravention, that in the five-year period between their arrivals at Graterford and the start of the trial on these complaints, there was a 63% increase in the prison's population. As the result of this increase, Graterford—which was built in

* At the time of oral argument on this appeal, Honorable Joseph F. Weis, Jr., was an active Circuit Judge. Judge Weis has since assumed senior judge status.

1933 and designed to accommodate 2,000 inmates—had an inmate population of 2,563. That population exceeded the facility's maximum design capacity by more than 25%. *See* Appendix to Appellants' Brief (Appellants' App.) at 287 (testimony of Deputy Superintendent Vaughn). The complainants asserted that, as the result of the overcrowding, inmates were subject to "double-bunking" for indeterminate durations, in cells that were designed for single occupancy, and that the close proximity of inmates that resulted from the overcrowding caused an increase in the occurrences of rapes and other violent assaults among the population. They noted that the increase in the Graterford population was not accompanied by any growth in the size of the staff and asserted that a significant lapse in security has been the result. Moreover, they asserted that the problems of inmate unrest and violence were aggravated by the fact that the Graterford staff was not adequately diverse and, as a result, not sufficiently sensitive to the circumstances of the inmates. They noted that while 80% of the inmate population at Graterford was black, only approximately 20% of the staff was black.

The complainants made further allegations regarding the condition of Graterford's physical plant. They complained that the facility's roof leaked and caused water seepage into the cells, flooding and persistent dampness. Further, they contended that the cells were improperly ventilated and that many of them had windows or transoms that were completely inoperable. They asserted that the combination of the dampness and the poor ventilation presented a significant health risk to the inmates because these conditions generated the growth of mold and bacteria that cause a variety of infectious illnesses. Appellants' App. at 538–40 (testimony of Dr. Robert Powitz).

The complainants charged that the aggregate of the conditions that they challenged caused a deprivation of the inmates' basic needs thereby constituting a violation of their eighth amendment rights.

At the conclusion of a bench trial, the district court found that the conditions in which the complainants were confined did not constitute cruel and unusual treatment. It noted that there were problems attributable to overcrowding at Graterford that resulted from "the state ... placing increasing numbers of persons who, by and large, have been committed to prison for violent anti-social behavior in proximity to each other[,]" *Hassine v. Jeffes*, No. 84–0696, at 2 (E.D.Pa. May 29, 1987) ("Opinion") *reprinted in* Appellants' App. at 1082 [available on WESTLAW, 1987 WL 11935], but concluded that "the individual facilities and services provided inmates at Graterford appears to meet and exceed the minimum needs of the inmates." *Id.* at 3, *reprinted in* Appellants' App. at 1083. The district court's opinion relied substantively upon the proposed findings of fact and conclusions of law that had been submitted by the Graterford Administration. These findings, as adopted by the district court, reflected its view that, although the conditions at Graterford left much room for improvement, they did not result in the deprivation of the complainants' basic needs so as to constitute a violation of their constitutional rights.[1]

---

1. The complainants assert on this appeal that the district court's verbatim adoption of the Administration's proposed findings is itself grounds for reversal. They argue that these proposed findings contained arguments and legal conclusions, rather than objective factual conclusions, and that, in some instances, the factual assertions contained in the proposal were inconsistent with the admissions of fact that the Administration had made prior to the start of the trial pursuant to Fed.R.Civ.P. 36. Citing the Supreme Court's decision in *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), the complainants contend that the district court's adoption of those proposed findings indicates that it failed to review properly the evidence presented. For that reason, they urge this Court to disregard the district court's findings of fact.

Graterford argues that the district court's complete adoption of proposed findings of fact does not evidence any error, and should not be disturbed if those findings are supported by the evidence of record. In support of this argument, Graterford cites this Court's decision in *Roberts v. Ross*, 344 F.2d 747 (3d Cir.1965), in which we noted that,

## II.

■ We are aware that inmates at Graterford are required to live in sub-standard conditions, and we are not unsympathetic to the fact that those conditions have worsened as a result of the significant overcrowding of the facility.[2] Indeed, after completing our "tour" of Graterford by way of the factual allegations of the complainants in this case, and the admissions by the Graterford Administration regarding the impositions that have been placed upon the inmates as a result of severe overcrowding, we are reminded of Coleridge's verse:

> As he went through Cold–Bath Fields he saw
>
> A solitary cell;
>
> And the Devil was pleased, for it gave him a hint
>
> For improving his prisons in Hell.

COLERIDGE, S.T., *The Devil's Thoughts*, in Poetical Works (E. Hartley ed. 1978).

[i]n most cases it will appear that many of the findings proposed by one or the other of the parties are fully supported by the evidence, are directed to material matters and may be adopted verbatim and it may even be that in some cases the findings and conclusions proposed by a party will be so carefully and objectively prepared that they may all properly be adopted by the trial judge without change.

*Id.* at 752.

A district court's verbatim adoption of findings proposed by one party is not, of itself, error. Although we cannot conclude in the present case that Graterford's submission was "so carefully and objectively prepared" that it did not require any modification by the district court, our review is only to determine whether the findings are supported by the evidence of record. If they are, then their source of origin is of no moment to the resolution of this appeal.

We note that the district court's decision not to edit Graterford's proposed findings and more carefully explain the rationale of its judgment resulted in some contradiction between the factual conclusions contained in the opinion, and the facts to which both parties stipulated. *Compare, e.g.,* Parties' Admissions of Fact # 3 and Appellants' App. at 287 (testimony of Ass't Superintendent Vaughn) (stipulation and direct testimony admission regarding the design capacity and population of Graterford that reflect a surplus over capacity of 25%) *with* Opinion at 18, *reprinted in* Appellants' App. at 1098 ("Security" Finding of Fact ¶ 8 that Graterford is 18% over capacity). Moreover, we note that because of the manner by which the proposed findings were phrased, the language of the opinion reaches beyond the circumstances of the complainants, and includes anticipated remedies as findings of fact. *See, e.g.,* Opinion at 34, *reprinted in* Appellants' App. at 1116 ("Overcrowding" Conclusion of Law ¶ 2 that "[d]efendants showed a high degree of deliberate attention to alleviating any problems arising from [Graterford's] increased population ... such as the major [Graterford] and Pennsylvania building program, expanded services, increased staff, use of temporary housing, and support of a good time bill.") These inconsistencies, however, do not so undermine the ultimate conclusion that the district court reached regarding the conditions of confinement of the complainants to require that those conclusions be disturbed on this appeal.

2. A report, prepared after an inmate uprising at Graterford, details the considerable problems that have accompanied the increase in the prison's population significantly beyond its maximum capacity:

[t]he ratio of inmates to staff goes up and problems of staff supervision of inmates and assurance of security increase.... Idleness grows as institutional jobs do not increase and more inmates are unable to work. Counseling and other treatment services are less available as the time must be distributed across more clients and treatment staff resources are diverted to other areas related to inmate movement and supervision. Most importantly, inmate-to-inmate, and [i]nmate-to-staff aggression grows as these problems ... are compounded by sharing the 6' by 12'8" cell with another inmate who is often young, angry and assertive. There is customarily an increase of inmate physical assaults on correctional officers.

Report of the Governor's Panel to Investigate the Recent Hostage Incident at Graterford State Correctional Institution, August, 1982, at 27 *reprinted in* Appellant's App. at 925. Moreover, we are aware that in recent years, several suits have been filed challenging many of the conditions of confinement at Graterford. *See, e.g., Peterkin v. Jeffes,* 661 F.Supp. 895 (E.D.Pa.) (challenging conditions at the Restricted Housing Unit), No. 87–1312 (3d Cir. argued Dec. 1, 1987); *United States ex rel. Para–Professional Law Clinic v. Kane,* 656 F.Supp. 1099 (E.D.Pa.) (challenging conditions of and access to Graterford's law clinic), *aff'd,* 835 F.2d 285 (3d Cir. 1987) (table), *cert. denied, sub nom. Zimmerman v. Para–Professional Law Clinic,* — U.S. ——, 108 S.Ct. 1302, 99 L.Ed.2d 511 (1988). While no prison facility is likely to be complaint proof, the conceded overcrowding at Graterford and the plethora of complaints filed regarding the conditions there indicate the presence of severe problems that require adequate attention.

Our review of the district court's conclusions, however, is limited to determining whether the district court's factual findings are clearly erroneous and, in light of those findings, whether the conditions of confinement violate the eighth amendment. Pursuant to this standard of review, we will not disturb factual findings "if the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Upon our examination of the record in this appeal, we are not left with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Thus, we cannot conclude that the district court's factual findings are clearly erroneous.

We will not rehearse completely the litany of complaints that were raised. At oral argument, this Court requested that the complainants file a supplemental letter memorandum identifying with specific detail the four findings of fact that they assert as the most clearly erroneous. *See* Appellants' Letter Brief Supplementing Oral Argument (Dec. 10, 1987) ("Letter Brief"). In response, they cited the district court's finding regarding the ventilation in the cells, ("Cell Conditions"—Finding of Fact ¶ 11, Opinion at 10, *reprinted in* Appellants' App. at 1090), its finding regarding the reporting of food service complaints, ("Food Service"—Finding of Fact ¶ 15, Opinion at 5, *reprinted in* Appellants' App. at 1085), its finding regarding the provision of medical care ("Medical and Health Care Services"—Finding of Fact ¶ 2, Opinion at 16, *reprinted in* Appellants' App. 1096) and its finding regarding the provision of mental health care. ("Mental Health"—Finding of Fact ¶ 2, Opinion at 13, *reprinted in* Appellants' App. at 1093). *See* Letter Brief at 1.

We have reviewed each of these allegations in light of the record. We note that there was conflicting testimony as to these claims. *Compare, e.g.,* Appellants' App. at 190, 322, 737 (appellants' testimony that cell ventilation was inadequate) *and id.* at 538–39 (appellants' expert testimony as to the lack of ventilation in the cells) *with id.* at 599 (testimony of A. Lefebvre, Administrative Assistant to the Superintendent at Graterford, supervising the accreditation project, that skylights, windows and vent hoods in each cell provided sufficient airflow, and that airflow in each cell was measured and found to be in compliance with American Correctional Association standards). There also was evidence regarding the existence of conditions throughout Graterford that raised colorable claims of constitutional violation. *See* Appellants' App. at 203–04 (Hassine's testimony regarding lack of adequate staffing for inmates that resulted in significantly increased threats and occurrences of violent assaults). We conclude, however, that there was sufficient evidence from which the district court could rationally draw its determination that the conditions of the complainants' confinement did not abridge their eighth amendment rights.

We recognize, as the Supreme Court has held in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), that the eighth amendment is more than a prohibition of barbarous treatment, and that it "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *Id.* In its application to cases in which prison conditions are challenged, however, that amendment has been interpreted to require that the inmates' basic needs for nutrition and shelter are met, and that the inmates are free from the "unnecessary and wanton infliction of pain." *Id;* accord *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Gibson v. Lynch*, 652 F.2d 348, 352 (3d Cir.1981), *cert. denied, sub nom. Stanley v. Zimmerman*, 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983); *cf. Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) ("[t]he eighth amendment duty articulated in *Estelle* has not been limited to elementary services necessary to protect inmates' health. The state also has a duty to protect inmates from unwarranted physical injury").

We have previously determined that the "test which we must apply in reviewing [a] district court's determination that sentenced inmates would be subjected to cruel and unusual punishment under ... [prison conditions] is whether the ... 'conditions ..., alone or in combination, deprive inmates of the minimal civilized measure of life's necessities.'" *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 999 (3d Cir.1983) (quoting *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399), *cert. denied, sub nom. Union County Jail Inmates v. Fauver*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 and *sub nom. DiBuono v. Fauver*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). The eighth amendment does not confer upon this Court the authority to impose upon the Graterford Administration, or any prison administration, our notions of enlightened policy. *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 1145, 63 L.Ed.2d 382 (1980) (Stewart, J., concurring); *accord Di Buono*, 713 F.2d at 1001.

In the present case, the district court concluded that the conditions that were challenged did not operate to deprive the complainants' of the basic necessities, or demonstrate the deliberate indifference of the Graterford Administration to their serious mental or physical health care needs. The district court therefore determined that the conditions in which the complainants were confined did not constitute a violation of the eighth amendment. We have determined that the district court's factual findings regarding the complainants' conditions of confinement do not warrant reversal and, in light of that finding, we conclude that the district court's determination that the complainants' did not demonstrate a violation of their eighth amendment rights must also remain intact.

### III.

In reaching its conclusion of no constitutional violation, however, the district court considered each contention only as it pertained to the named complainants. This narrowed scope of decision resulted from the district court's previous order denying the complainants' motion for class certification. *See Hassine v. Jeffes*, No. 84–0696, mem. & order (E.D.Pa. June 25, 1985) ("Class Certification Opinion"), *reprinted in* Appellants' App. at 1128.

The district court's decision to deny class certification was predicated upon its view that the named complainants were improper parties to represent the class of inmates on the claims that were alleged. Citing this Court's decision in *Weaver v. Wilcox*, 650 F.2d 22 (3d Cir.1981), the district court asserted that "[the complainants] have no standing to raise claims of inmates other than themselves." Opinion at 26, *reprinted in* Appellants' App. at 1106. It determined that the complainants lacked standing to assert the cell condition of double-bunking, because none of them had been subject to that condition, and the conditions related to the provision of mental health care since none of the complainants had required that care. Also, in light of this ruling, the district court examined the other conditions raised by the complainants, such as dampness and poor ventilation in the cells, inadequate security, and unsanitary food service with regard only to the evidence that the complainants submitted regarding their individual circumstances.

■ We note initially the district court's misplaced use of the term "standing" in its decision that the complainants were not proper parties. "Although the concepts [of standing and adequacy of status to maintain a class action] appear related, in that they both seek to measure whether the proper party is before the court to tender the issues for litigation, they are in fact independent criteria." H.B. Newberg, *Newberg On Class Actions*, § 2.09 (2d ed. 1985) ("Newberg"). In our view, these concepts should be evaluated separately. In the present case, although the district court expressed its conclusion based upon its view of the complainants' lack of standing, the analysis that it used reflects the determination that complainants could not maintain a class action because they failed to meet three of the four requirements of Rule 23(a) and thus were inadequate class representatives. In this

regard, we note that review of standing is a threshold inquiry, and that the proper disposition of a case in which the putative class plaintiff lacks standing is to dismiss the complaint—not to deny class certification—and to avoid reaching a decision on the merits of the claims presented. *See O'Shea v. Littleton,* 414 U.S. 488, 494 n. 3, 94 S.Ct. 669, 675 n. 3, 38 L.Ed.2d 674 (1974) ("There was no class determination in this case as the complaint was dismissed on grounds[, the absence of standing,] which did not require that determination to be made."); *see also* Newberg at § 2.09. The district court expressed no finding that all or any part of the complaint should be dismissed and, therefore, we will treat its decision not to adjudicate all of the claims asserted by the complainants as a denial of class status, and evaluate its analysis accordingly.[3]

We conclude that the district court's denial of class certification was erroneous. Rule 23 provides that

**3.** Although the district court's opinion denying class certification does not express a decision to dismiss those claims for which the district court concluded that the complainants were without standing, we note that even if its order is construed in that manner, it is in error. Standing to assert a claim requires that the plaintiff demonstrate personal interest in the outcome of the litigation; the plaintiff must show that "he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Bender v. Williamsport,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). We are persuaded that the complainants demonstrated sufficient interest in the outcome of each of the challenged conditions to survive dismissal of their claims on standing grounds.

The district court's reliance upon *Weaver* is misplaced. That case concerned a plaintiff who sought to represent a class of inmates challenging conditions of confinement at a state prison at which he was no longer confined. He had only been temporarily confined at that facility and, after his relocation, he filed a complaint regarding conditions on behalf of the inmates still confined. Although it appeared that he may have had viable complaints regarding the infringement of his civil rights during his confinement, his suit attacked only the conditions that existed at the facility on behalf of the class of inmates that remained. In our decision that he lacked standing to raise claims on behalf of those inmates, we concluded that, since the

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The district court concluded that the complainants had succeeded in demonstrating "numerosity," but that they had failed to satisfy any of the last three requirements. In our view, the district court too narrowly interpreted the requisites of Rule 23 in its denial of class standing to the complainants.

## A. *"Commonality" and "Typicality"*[4]

■ The "typicality" and "commonality" prerequisites of Rule 23 do not require that

plaintiff was not threatened by the prison conditions, and was in no danger of being injured by them, he lacked standing to assert them. That circumstance, however, is markedly different from the circumstances of the present case. Here, the complainants are currently confined at Graterford, and are vulnerable to injury that would result from significantly deficient conditions, or inadequate security. *See, e.g., Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir.1985) (holding that inmate's claim presented sufficient allegation of eighth amendment violation, and that "inmate's right to be protected from constant threats of violence and sexual assault from other inmates does not require that he wait until he is actually assaulted before obtaining relief"). For these reasons, we are persuaded that the complainants present an adequate "case or controversy," and that they are entitled to adjudication of their claims.

The record indicates that Hassine was transferred to the State Correctional Institute at Western prior to the conclusion of the litigation in the district court. The record does not indicate whether that transfer was made for permanent or temporary reassignment. If, in fact, Hassine is no longer confined at Graterford, in light of *Weaver,* he is without standing to challenge the on-going conditions at that facility. On remand, this action may be continued by the remaining named plaintiffs, or, upon their transfers, by substituted appropriate parties.

**4.** Although Rule 23 establishes these two prerequisites as separate and distinct, the analyses overlap, and therefore these concepts are often

all of the putative class members share *identical* claims. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.) (" '[t]ypical' is not identical"), *cert. denied sub nom. Weinstein v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). These prerequisites mandate only that complainants' claims be common, and not in conflict. "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Id.* (quoting *Weiss v. York Hospital*, 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) *and sub nom. Medical and Dental Staff of York Hospital v. Weiss*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)).

■ Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class, and that the named plaintiff demonstrate a personal interest or "threat of injury … [that] is 'real and immediate,' not 'conjectural' or 'hypothetical.' " *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675; *cf. Hayes v. Secretary of Dept. of Public Safety*, 455 F.2d 798 (4th Cir.1972) (Inmate of state institution who did not allege that brutality and other misconduct had been practiced against him, but rather that he was part of institutional population that must live from day to day under the threat of such brutality, was "injured" and thus a member of a class that was injured, and he could maintain a class action for himself and others similarly situated against the prison officials); *Moncravie v. Dennis*, 89 F.R.D. 440 (D.C.Ark 1981) (conditions of confinement in county jail were the same for all inmates who were incarcerated and common questions of fact and law were present in proposed class action challenging conditions of confinement, despite the fact that inmates' terms varied in length).

■ Certainly, the complainants in the present case have demonstrated the commonality of their claims with the claims of the class that they sought to represent. With regard to the issue of double-bunking, for example, the district court noted that "in Cell Block A double bunks have been installed in the cells," Class Certification Opinion at 3, *reprinted in* Appellants' App. at 1030, and it found that 50 cells on Block A contained inmates who were double-bunked. Despite the fact that two of the complainants were at that time housed on Block A, the district court determined that they were inadequate representatives of the class on that claim because neither of them, prior to that time, had been double-bunked. Ironically, both of these complainants were subsequently double-bunked. In our view, the occurrence of the complainants' actual double-bunking was not necessary to their demonstration of the adequacy of their representation of the class on this claim. It did, however, clearly manifest the commonality of the complainants' claims with those of the class that they sought to represent, and the error of the district court's holding that the claims were not common.

discussed together. *E.g., Droughn v. F.M.C. Corp.,* 74 F.R.D. 639 (E.D.Pa.1977) (treating commonality and typicality requisites interchangeably in employment discrimination case). The Supreme Court, as well has noted that

the commonality and typicality requirements of Rule 23(a) tend to merge … [in that] [b]oth serve as guideposts for determining whether under particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). While we perceive a conceptual distinction between these prerequisites ("commonality" like "numerosity" evaluates the sufficiency of the class itself, and "typicality" like "adequacy of representation" evaluates the sufficiency of the named plaintiff), we will discuss these issues together since the district court relied upon both in its determination that the complainants were inadequate representatives of the class.

This same rationale is equally applicable to the claims asserted by the complainants with regard to the conditions of the cells, food service and inmate security. Even if the complainants themselves could not demonstrate that there was intolerable water seepage into their cells, or that there was no ventilation because their windows could not be operated, or that they had gotten ill because of food that had not been properly stored or prepared in compliance with sanitary requirements, or that they had been the victims of a rape or other assault, the district court should not have decided that it was precluded from examining these conditions with regard to the entire class of inmates at Graterford. The ability of a named plaintiff to succeed on his or her individual claims has never been a prerequisite to certification of the class. In *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the Supreme Court determined that even the expiration of the named plaintiff's substantive claim did not moot the claims asserted on behalf of the class. We have applied that ruling to our decisions that the defeat of the named plaintiff's individual claim on the merits, after the denial of class certification, does not moot the class action issues. *See Ei-*

*senberg,* 766 F.2d at 784; *Mazus v. Dep't of Transportation,* 629 F.2d 870, 875–76 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *Alexander v. Gino's, Inc.,* 621 F.2d 71, 73–74 (3d Cir.) *(per curiam ), cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *cf. Sirota v. Solitron Devices, Inc.,* 673 F.2d 566 (2d Cir.) (it is not necessary to determine whether the named plaintiffs have meritorious claims before they can be certified as class representatives), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). That rationale is applicable to the present case. We hold that the complainants' assertion that these conditions existed, and that they were *subject* to them —even if they had not at the time of assertion themselves been injured by those conditions—was sufficient to require adjudication of the claims as to the class.[5]

### B. *"Adequacy of Representation"*

With regard to the final prerequisite of Rule 23(a), the district court concluded that because the complainants "may lack standing as to certain grievances[,] ... [they] may not be able to fully litigate possible grievances of other members of the class," Class Certification Opinion at 7, *reprinted in* Appellants App. at 1134, and

---

5. We note that the complainants also sought to raise claims that concerned the provision of mental health care despite the fact that they did not require those services. The complainants asserted that the significant population of mentally ill patients at Graterford posed a safety risk to the general population because of the inadequate facilities to care for those inmates. As a result of overcrowding in the psychiatric observation ward ("D–Ward"), many inmates who are mentally unstable have been transferred into other parts of the facility, including the general population cell blocks. The complainants alleged that these mentally ill inmates were improperly supervised and treated while in the general population and thus were the sources of many assaults and random crimes against other inmates. Appellants' App. at 211 (testimony of Hassine). The complainants also claimed that the provision of mental health care on D–Ward itself was inadequate. In this regard, they noted the inadequacy of emergency care facilities, and the lack of sufficient medical and psychiatric staff.

In our view, the complainants made allegations that sufficiently demonstrated how the inadequacy of the care and treatment of mentally

disturbed inmates presented a threat of injury to them to demonstrate their standing to raise those claims. Even apart from those allegations, however, the complainants should have been accorded standing to raise claims regarding the inadequacy of the provision of any health care service, to which they are entitled, and which they might at some time require. *Cf. Coley v. Clinton,* 635 F.2d 1364, 1378 (8th Cir. 1980) (class action Rule 23(b)(2) is "an especially appropriate vehicle for civil rights actions seeking ... declaratory relief 'for prison and hospital reform'") (quoting 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.–40[1] (1980)). If the district court nonetheless determined that the named parties did not adequately represent the claims of inmates who presently require mental health care, in light of the fact that there is no indication that the other claims raised by the complainants would conflict with this claim, the remedy preferable to avoiding adjudication of the conditions of mental health care would have been to allow the complainants to amend the complaint to add a named plaintiff who was at that time receiving or in need of such care.

for that reason could not demonstrate that they could adequately protect the interests of the class. The district court's rationale in this conclusion is flawed. As we noted above, the standing analysis is distinct from the analysis of the adequacy of representation by a putative named plaintiff. The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.) ("the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation ... and ... must not have interests antagonistic to those of the class"), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *cf. In Re Northern Dist. of Cal., Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847 (9th Cir. 1982) ("[a]dequacy of representation depends on qualifications of counsel for representatives, absence of antagonism, sharing interests between representatives and absentees, and unlikelihood that suit is collusive") (citing 7 C. Wright & Miller, Federal Practice and Procedure §§ 1765–1769 at 615–57), *cert. denied sub nom. A.H. Robins Co., Inc. v. Abed,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

■ In the present case, it appears that the complainants would adequately and vigorously pursue the interests of the class and we can find no potential for conflict between the claims of the complainants and those of the class as a whole. *See Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975) (holding in civil rights class action that, "where it is unlikely that segments [that] the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of the class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met") (footnote omitted). We are satisfied, based upon the record of this case, that the named complainants demonstrate sufficient interest, willingness and ability to pursue the claims that were asserted on behalf of the class, and thus that their representation meets the final requisite of Rule 23.

### IV.

■ Having concluded that the complainants met the prerequisites established by 23(a), we turn briefly to the additional requirement of Rule 23(b)(2) that putative class plaintiffs demonstrate that the party opposing the class acted in a manner that is generally applicable to the class, thereby making injunctive or other relief appropriate to the class as a whole. To meet this requirement, the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of *res judicata. Yearsley v. Scranton Housing Authority,* 487 F.Supp. 784, (M.D. Pa.1979). We can perceive of no reason to persuade us that the complainants' litigation of each of the claims asserted on behalf of the class would work subsequent injustice to the interests of absent class members. The goal of the complainants, consistent with the interests of the entire population at Graterford is to improve the overall conditions of the facility. They asserted deficiency in the overall conditions that existed at the time that their complaint was filed, and complained that those conditions adversely affected the entire population at Graterford. As we noted in *Weiss,* "[w]hen a suit seeks to define the relationship between the defendant(s) and the world at large, as in this case, (b)(2) certification is appropriate." 745 F.2d at 811. *See also Goldy v. Beal,* 429 F.Supp. 640 (M.D.Pa.1976) (3–Judge court). Certainly, the class action sought in the present case attempted to define the relationship between the Graterford Administration and the "world" that is the prison's population, and for that reason, we are convinced that class certification under Rule 23(b)(2) was

appropriate. *See, e.g., Coley v. Clinton,* 635 F.2d 1364 (8th Cir.1980) (Rule 23(b)(2) must be liberally read in context of civil rights suits, and is an especially appropriate vehicle for actions seeking prison reform). We will, therefore, reverse the district court's order denying class certification, and remand this matter for adjudication of the class claims.[6]

## V. CONCLUSION

For the foregoing reasons, we will affirm the district court's judgment as to the claims asserted by the appellants. We will reverse its order denying class certification and remand for further findings regarding the claims asserted on behalf of the class.

---

**6.** We express no view as to whether the claims asserted on behalf of the class demonstrate violation of the eighth amendment; on remand, the district court, after entering an order certifying the class, can determine whether it is appropriate to enter against the class its prior factual findings against the claimants. *See, e.g., Goodman v. Lukens Steel,* 777 F.2d 113, 125–26 (3d Cir.1985), *aff'd on other grounds,* — U.S. —, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). We note that the Supreme Court has decided that double-bunking is not a *per se* violation of the Constitution, but it also noted that there is "[n]o static 'test' ... by which courts [can] determine whether conditions of confinement are cruel and unusual." *Rhodes,* 452 U.S. at 346, 101 S.Ct. at 2399. Significantly, in reaching its conclu-

sion that there was no violation of the eighth amendment in *Rhodes,* the Supreme Court relied upon evidence that the double-bunking challenged in that case did not cause an "increase [of] violence among inmates or create other conditions intolerable for prison confinement." *Id.* at 348, 101 S.Ct. at 2400. That circumstance is distinguishable from the present case, in which the complainants have asserted an increase in violence that is attributable in part to double bunking. Each asserted violation of that guarantee must be evaluated on its own facts, in light of " 'evolving standards of decency that mark the progress of a maturing society.' " *Id.* (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)).