Jane ROE, et al.

v.

**OPERATION RESCUE, et al.**

Civ. A. No. 88–5157.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1988.

Mary A. McLaughlin, Linda J. Wharton, Debra L. Subar, Kathryn Kolbert, Women's Law Project, Philadelphia, Pa., for plaintiffs.

Joseph F. Wusinich, III, Wusinich & Brogan, West Chester, Pa., for Michael McMonagle, Pro–Life Non Violent Action Project of Philadelphia, and Chester County Citizens Concerned About Life.

William A. Bonner, Rutherford Institute of Pennsylvania, Media, Pa., for Randall Terry and Operation Rescue.

J. Michael Considine, Jr., Philadelphia, Pa., for Joseph Foreman and Council for Sanctity of Human Life.

Marion Edwyn Harrison, Washington, D.C., David L. Pennington, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for Judith A. Brown and American Life League.

Thomas Herlihy, Bronx, N.Y.

## MEMORANDUM

NEWCOMER, District Judge.

This is an action for declaratory and injunctive relief sought against various anti-abortion activists. Presently before the court is plaintiffs' motions for class action certification and defendants' motion to allow discovery on the class action certification.

## I. Procedural Background

Plaintiffs filed this action on June 29, 1988, seeking declaratory and injunctive relief addressed to the health and safety of women seeking abortions or other family planning services in Southeastern Pennsylvania during the week of July 4, 1988. Along with the complaint, they sought a temporary restraining order and preliminary injunction to ensure that anti-abortion protest activities of the defendants planned for the week of July 4, 1988, would not interfere with plaintiffs' rights to obtain and provide abortions and other family planning services. After a hearing in open court on June 30, 1988, the motion for a temporary restraining order (TRO) was granted. The TRO enjoined defendants and other persons from a variety of specified activities which might interfere with women entering and exiting abortion facilities in the metropolitan Philadelphia area during the period July 4 to July 9, 1988. Anti-abortion protest activities occurred at abortion facilities in the metropolitan Philadelphia area during the period July 4 to July 9, 1988, and plaintiffs moved for an order adjudging certain defendants and other named individuals in civil contempt for violating the TRO. At a hearing in open court on September 13, 1988, the hearing on the petition for civil contempt was continued until November 14, 1988, at which time the court will also consider the propriety of permanent injunctive relief. I now address the motions before me.

## II. Class Action Certification

Rule 23 of the Federal Rules of Civil Procedure governs class actions. The party seeking certification has the burden of satisfying the requirements of Rule 23(a) and 23(b). *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 321

(E.D.Pa.1987). The prerequisites to a class action are specified in Rule 23(a) as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Once the four prerequisites of Rule 23(a) are satisfied, the movant must next demonstrate that the action falls within one of the three categories of cases in section (b) of the Rule. In the instant matter, plaintiffs seek certification under Rule 23(b)(2), which reads as follows:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \* \* \* \*
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; ....

In deciding the certification motion, the court need only inquire into the facts as presented in the pleadings and affidavits, if those documents sufficiently indicate that the Rule 23 requirements have been met. *Pistoll v. Lynch*, 96 F.R.D. 22, 26 n. 4 (D.Haw.1982); *Blackie v. Barrack*, 524 F.2d 891, 900–01 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The court is bound to take the substantive allegations contained in the pleadings and affidavits as true. *Blackie*, 524 F.2d at 901 n. 17. Appraisal of a class action, however, does not depend on a showing of a probability of success on the merits, nor is the court authorized to make such an inquiry at this stage of the proceedings. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Fickinger v. C.I.*

*Planning Corp.*, 103 F.R.D. 529, 531 (E.D. Pa.1984).

Plaintiffs' motion seeks certification of two classes. The first class is a class of women plaintiffs consisting of all women seeking abortions or reproductive health services in the Philadelphia metropolitan area, beginning July 4, 1988, and continuing throughout the pendency of this action, who are directly or indirectly affected by the actions of defendants and those acting in concert with them. The second class is a class of physician plaintiffs, consisting of all physicians who perform abortions or provide reproductive health services in the Philadelphia metropolitan area, as well as each physician's staff and patients, beginning July 4, 1988, and continuing throughout the pendency of this action, who are directly or indirectly affected by the actions of defendants and those acting in concert with them. In this memorandum, I will address the women class as I proceed through the prerequisites of Rule 23. Consideration of the physician/staff class will be held in abeyance until after the status conference scheduled for November 1, 1988.

### A. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous as to make joinder impracticable. Numerosity is a flexible standard, and often the practicalities of the situation, rather than a strict application of the numerosity requirement, will be determinative of the question. *Weiss v. York Hospital*, 745 F.2d 786, 807–08, 808 n. 35 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *Slanina v. William Penn Parking Corp., Inc.*, 106 F.R.D. 419, 423 (W.D.Pa.1984).

Plaintiffs' affidavits indicate that 109 women patients who had medical services scheduled were directly affected by defendants' anti-abortion protest activities at three clinics during the period July 5 to July 9, 1988. Plaintiffs' Exhibits to Motion for Civil Contempt, Exhibits C, D, and E. In addition, during the week of July 4, 1988, nearly 1300 women visited plaintiff Planned Parenthood of Southeastern Penn-

sylvania, an organization that provides abortions and other family planning services. At least sixty-four of these women made a decision to have an abortion. *Id.,* Exhibit F. Based on these allegations, which I must accept as true, I find that the women-class satisfies the numerosity requirement.

### B. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Commonality is not defeated by slight differences in class members' positions. *Snider v. Upjohn Co.,* 115 F.R.D. 536, 539 (E.D.Pa.1987) (citing *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)). In the instant matter, relief is sought by both putative classes as a result of the same activities and course of conduct by defendants: namely, anti-abortion protest activities at Philadelphia area health care facilities that perform abortions. The central question presented in this action is whether defendants' anti-abortion protest activities during the period July 5–July 9, 1988 violated the rights of members of both putative classes. Under these circumstances, the commonality requirement is clearly satisfied. *See International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 462–63 (N.D.Cal.1983) (commonality existed when it was alleged that defendants acted in uniform manner with respect to the class and that this caused deprivation of plaintiffs' constitutional rights).

### C. Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. While this requirement is similar to the commonality requirement, *General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982), the Third Circuit has explained recently typicality as entailing "an inquiry [into] whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988) (citation omitted). The typicality requirement is satisfied if plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same clear theory. *Snider v. Upjohn Co.,* 115 F.R.D. 536, 540 (E.D.Pa.1987) (citation omitted).

Plaintiffs seeking to represent the women-class are fictiously named Jane Roe and Mary Moe. According to their verifications (signed "under penalty of perjury" but not sworn to and notarized), Roe and Moe are women who were pregnant and had decided to terminate their pregnancies by abortion during the week of July 4, 1988, at abortion facilities in Southeastern Pennsylvania. Plaintiffs Exhibits to the Complaint, Exhibits E and F. Both women indicated that it was important to them to have an abortion as scheduled during the week of July 4, 1988, and that any delay or postponement resulting from protest activities by the defendants would be "harmful" or "difficult." Roe's verification further states: that it is important to her to obtain an abortion in a private and confidential manner, which is why she is bringing the lawsuit in a fictitious name and why she would object to facing demonstrators at her physician's office; and that the blockade planned by defendants at the clinics will cause her great anxiety but not change her resolve to exercise her "constitutional right to choose abortion." Moe's verification similarly indicates a fear facing persons blockading her doctor's office and of harassment.

■ Plaintiffs Roe and Moe were pregnant at the time the complaint was filed. At present, they are no longer pregnant, "though each may again become so." Plaintiffs' Motion for Class Action Certification at 11. As a general rule, those who seek to invoke federal jurisdiction must present an actual case or controversy as required by Article III of the Constitution. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983). Due to the shortness of the human

gestation period, however, the law is not applied so rigidly when pregnancy is involved in the litigation. *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). Thus, I find that this case belongs to "that narrow class of cases in which the termination of a class representative's claim does not moot the claims of unnamed members of the class." *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975). This case is one that is distinctly "capable of repetition, yet evading review." *Id. See also Roe v. Casey,* 464 F.Supp. 487 (E.D. Pa.1978) (class action consisting of "pregnant or potentially pregnant women").

Based on plaintiffs' pleadings and verifications, the court finds the claims of Roe and Moe typical of the claims of the putative class of women who seek to obtain abortion or other reproductive health services. When the complaint was filed, both Roe and Moe were pregnant women who had scheduled abortions. The primary relief sought was injunctive, and was designed to ensure that pregnant women can obtain abortions without undue harassment or interference by the defendants and others. The interests of Roe and Moe, at the time the complaint was filed, were certainly aligned with and typical of pregnant women who similarly were unable to obtain abortion or other medical services at the three clinics during the period July 5–9, 1988, (as a result of defendants' protest activities), or pregnant women who might face similar obstacles in the future.

### D. Adequacy of Representation

The fourth and final prerequisite to a class action is that the plaintiff must adequately represent the interests of the class. Fed.R.Civ.P. 23(a)(4). The Third Circuit has stated that this inquiry should determine whether the putative plaintiff "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988) (citations omitted).

First, based on the filings and court appearances to date, the court has no reason to doubt, nor does defendants' memorandum in opposition contest, the adequacy of plaintiffs' counsel. Second, with regard to possible conflict of claims between the putative plaintiffs and members of the classes, the court does not perceive any conflict or antagonism between the interests of these groups. Each group seeks prospective injunctive relief; in addition, certain class members and perhaps the putative plaintiffs may be entitled to damages as a result of alleged violations of this court's TRO pertaining to the July 1988 period. That the relief sought may vary among named representatives and members of the class does not, however, show conflicting or antagonistic interests and the court finds none here. In addition, I note that plaintiffs have requested that any damages awarded as a result of alleged violations of the July TRO be paid to a nonprofit organization called Greater Philadelphia Women's Medical Fund. Plaintiffs' Memorandum of Law in Support of Motion for Civil Contempt at 18 n. 8.

Third, and perhaps most difficult, is the determination of the putative plaintiffs' ability and incentive to represent the class interests. Defendants argue that Roe and Moe's refusal to attend depositions and their apparent absence from two hearings held in this case indicate that they will not adequately protect the interests of the class.

Roe and Moe have both given signed verifications in this case. Their attendance at depositions is the subject of a discovery dispute, with plaintiffs' counsel at present refusing to produce the women on privacy and confidentiality grounds. While a stronger showing of "ability and incentive" on their part would be desirable, this may not be practical nor appropriate under the circumstances.

A case with circumstances similar to the instant one is *Doe v. Stegall,* 653 F.2d 180 (5th Cir.1981). In that case, a mother and her two children requested a protective order permitting them to proceed under ficti-

tious names in their suit challenging the constitutionality of prayer and bible reading exercises in Mississippi public schools. The district court denied the motion. On appeal, the Fifth Circuit reversed. While setting forth no hard and fast formula for ascertaining whether a party may sue anonymously, the court stated:

> The decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings. We emphasize the special status and vulnerability of the child-litigants, the showing of possible threatened harm and serious social ostracization based upon militant religious attitudes, and the fundamental privateness of the religious beliefs, all of which are at the core of this suit to vindicate establishment clause rights. We conclude that the almost universal practice of disclosure must give way in this case to the privacy interests at stake.

*Id.* at 186. *See also Southern Methodist Univ. Ass'n. v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir.1979) (citing cases allowing plaintiffs to use fictitious names). This analysis provides guidance relevant to the determination of whether Roe and Moe are appropriate class representatives.

With regard to the subject matter in the instant case, the Supreme Court has stated:

> Our cases long have recognized that the Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government.... That promise extends to women as well as to men. Few decisions are more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman's decision—with the guidance of her physician and with the limits specified in Roe—whether to end her pregnancy. A woman's right to make that choice freely is fundamental. Any other result, in our view, would protect inadequately a central part of the sphere of liberty that our law guarantees equally to all.

*Thornburgh v. American College of Obst. and Gyn.*, 476 U.S. 747, 772, 106 S.Ct. 2169, 2184, 90 L.Ed.2d 779 (1986) (citations omitted).

In this case, Roe and Moe exercised their fundamental right to choose abortion. As the Supreme Court has stated, few decisions are more personal and intimate, or more basic to individual dignity. Additionally, the conduct of certain anti-abortion protesters leaves little doubt in the court's mind that requiring Roe and Moe to go beyond giving verified statements by attending hearings and depositions may subject them to undue harassment. *See generally* Plaintiffs' Exhibits to the Complaint (detailing local and national anti-abortion protest activities occurring prior to the TRO issued by this court on June 30, 1988); Plaintiffs' Exhibits to Motion for Civil Contempt (detailing defendants' activities allegedly in violation of the June 30, 1988, TRO); *Frisby v. Schultz*, — U.S. ——, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (upholding ordinance banning residential picketing, enacted in response to anti-abortion protests at doctor's residence). Under these circumstances, this court cannot and will not require more of Roe and Moe. The court is satisfied that they will adequately represent the women-class seeking certification. *See Doe v. Mundy*, 514 F.2d 1179, 1182 (7th Cir.1975) (plaintiff's anonymity did not weaken her ability to represent the class, citing *Roe v. Wade*, 410 U.S. 113, 120, 93 S.Ct. 705, 710, 35 L.Ed.2d 147 (1973)); *see also Reproductive Health Svcs. v. Webster*, 662 F.Supp. 407, 412 (W.D.Mo.1987) (failure to name as plaintiff a pregnant female seeking abortion services did not invalidate action brought on such persons' behalf; class action assures anonymity and prevents chilling effect associated with public exposure concerning abortions); *cf. Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 n. 9 (3d Cir.1973) ("experience teaches that it is counsel for the class representative and not the named parties, who direct and manage [class] actions.").

### E. Appropriateness of Injunctive Relief

In addition to satisfying the four requirements of Rule 23(a), putative class plain-

tiffs must show pursuant to Rule 23(b)(2) that "the party opposing the class acted in a manner that is generally applicable to the class, thereby making injunctive or other relief appropriate to the class as a whole." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir.1988). Similarly, the Third Circuit has noted that "[w]hen a suit seeks to define the relationship between the defendants and the world at large, ... [Rule 23](b)(2) certification is appropriate." *Id.* (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir.1984)).

 The goal of plaintiffs here is to obtain abortion and reproductive health services freely and without undue harassment. Certainly the class action sought is an attempt to define the relationship between anti-abortion groups and individuals and the "world" consisting of those receiving and offering abortions and reproductive health services. Furthermore, the court sees no reason why litigation of the class claims would cause subsequent injustice to the interests of absent class members. For these reasons, the court is convinced that class certification for the women-class under Rule 23(b)(2) is appropriate. In light of the preceding, the court will deny defendants' motion to allow discovery on the class certification issue.

An appropriate Order follows.

### ORDER

AND NOW, this 27th day of October, 1988, for the reasons stated in the accompanying memorandum and upon consideration of the motions and responses thereto, it is hereby Ordered that:

1. Plaintiffs' motion for class action certification of the women class is GRANTED. Plaintiffs' motion for class action certification of the physician/staff class is HELD IN ABEYANCE until after the status conference scheduled for November 1, 1988.

2. Plaintiffs Jane Roe and Mary Moe are CERTIFIED to sue as the representative parties on behalf of all women seeking abortions or reproductive health services in the City of Philadelphia and metropolitan area (including the City of Allentown, Pennsylvania, and Cherry Hill, New Jersey), beginning July 4, 1988, and continuing throughout the pendency of this action, who are directly or indirectly affected by the actions of defendants and those acting in concert with them, which class is hereby CERTIFIED.

3. Plaintiffs' present counsel is DESIGNATED as counsel for the class.

4. Plaintiffs' counsel shall file a proposal for class notification, *see* Fed.R.Civ.P. 23(c)(2), by November 10, 1988. Defendants may respond to the proposal on or before November 17, 1988.

5. Defendants' motion to allow discovery on the class certification issue is DENIED.

AND IT IS SO ORDERED.