In re CELL PATHWAYS,
INC., SECURITIES
LITIGATION II.

This Document Relates To:  All Actions.

No. 01–CV–1189.

United States District Court,
E.D. Pennsylvania.

July 27, 2001.

Sherrie R. Savett, Philadelphia, PA, Fred Taylor Isquith, Wolf, Halderstein, Alder, Freeman & Hertz, New York City, for plaintiffs.

Marc J. Sonnenfeld, Karen Pieslak Pohlmann, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Laurie B. Smilan, Wilson Sonsini Goodrich & Rosati PC, Charles Paul Chalmers, Lyle Roberts, Wilson Sonsini Goodrich & Rosati Prf. Corp., McLean, VA, for defendants.

Jonathan I. Arnold, Chicago, IL, pro se.

Anita W. Garten, Houston, TX, pro se.

Douglas Risen, Berger & Montague, Philadelphia, PA, Stuart L. Berman, Schiffrin & Barroway, LLC, Bala Cynwyd, PA, for Sanford D. Goldfine, Michael Denton, Jr., William Liss, Laura Liss, Jordan Liss, Jason Liss, Salvatore Salibello, Paul Didion, Richard Darlington, and Kendall Elsom.

## MEMORANDUM AND ORDER

MCLAUGHLIN, District Judge.

These consolidated actions brought against Cell Pathways, Inc. ("Cell Pathways"), Robert Towarnicki, and Rifat Pamukcu seek damages for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b–5 promulgated thereunder. They are brought on behalf of purchasers of Cell Pathways securities between October 27, 1999 and September 22, 2000, and allege that the defendants made false and misleading statements concerning the drug Aptosyn.

The Court must now decide two competing motions for appointment as lead plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Plaintiffs Paul Didion, Sanford Goldfine, Michael Denton, Jr., and Richard Darlington (the "Didion plaintiffs") have filed an amended motion for appointment as lead plaintiffs and for approval of their selection of the law firms of Berger & Montague, P.C. and Schiffrin & Barroway, LLP as co-lead counsel. Putative class members, Jonathan Arnold and Anita Garten, two economists, have filed a *pro se* motion to be selected as lead plaintiffs. Mr. Didion and Ms. Garten have not filed a complaint. The Court will grant the amended motion of the Didion plaintiffs for appointment as lead plaintiffs and will deny the motion of Mr. Arnold and Ms. Garten. The Court will also approve the Didion plaintiffs' selection of co-lead counsel.

Under the PSLRA, the Court shall appoint as lead plaintiff(s) the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class. 15 U.S.C. § 78u–4(a)(3)(B). In determining who is the "most adequate plaintiff," the Act provides that:

the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

**(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

**(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and

**(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Once the presumptively most adequate plaintiff is es-

tablished, a member of the purported plaintiff class may rebut the presumption only upon proof that such plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The following three motions were initially filed with the Court: (1) *pro se* motion by Mr. Arnold and Ms. Garten for appointment as lead plaintiffs; (2) motion by Sanford D. Goldfine, Michael Denton, Jr., William Liss, Laura Liss, Jordan Liss, Jason Liss, and Salvatore Salibello for appointment as lead plaintiffs and for approval of Berman, DeValerio & Pease LLP and Schiffrin & Barroway as co-lead counsel; and (3) motion by Paul Didion, Richard Darlington, and Kendall Elsom for appointment as lead plaintiffs and for approval of Berger & Montague and Wolf Haldenstein Adler Freeman & Herz, LLP as co-lead counsel. The movants all filed timely motions as required by sub-paragraph (aa). Notice was published on March 22, 2001, and the initial motions were filed on May 21, 2001.

The latter two groups of movants ultimately combined to form a new group of movants (Paul Didion, Sanford Goldfine, Michael Denton, and Richard Darlington), represented by the law firms of Berger & Montague and Schiffrin & Barroway. On June 4, 2001, this new group, now known as the Didion plaintiffs, filed an amended motion for appointment of lead plaintiffs and approval of selection of co-lead counsel.[1]

The Court finds, and movants Arnold and Garten do not dispute, that the Didion plaintiffs have the largest financial interest in the relief sought by the putative class within the meaning of sub-paragraph (bb). The group as a whole claims losses of approximately $1,740,829; they individually claim approximate losses as follows: Paul Didion, $717,829; Sanford Goldfine, $432,000; Michael Denton, $360,000; and Richard Darlington, $231,000. Mr. Arnold and Ms. Garten did not state their losses in their papers

filed in support of their motion. At the hearing held on July 13, 2001, however, they conceded that individually, they do not have losses as great as Mr. Darlington, who has the smallest amount of losses in the Didion group. They even conceded that together they probably do not have losses as great as Mr. Darlington. July 13, 2001, Hearing, p. 11.

Rule 23, referred to in sub-paragraph (cc), requires that a proposed lead plaintiff demonstrate that he or she satisfies the typicality and adequacy requirements. *See EZRA Charitable Trust v. Rent–Way, Inc.*, 136 F.Supp.2d 435, 444 (W.D.Pa.2001); *In re Cephalon Securities Litig.*, No. CIV. A. 96–0633, 1998 WL 470160, *6 (E.D.Pa. Aug.12, 1998); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 407 n. 8 (D.Minn.1998); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D.Tex.1997).

■ The typicality requirement of Rule 23 is satisfied where the representative's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the class members, and are based on the same legal theory. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir.1992); *Krangel v. Golden Rule Resources, Ltd.*, 194 F.R.D. 501, 505 (E.D.Pa. 2000). The Didion plaintiffs satisfy this requirement, because, like all other class members, they: (1) purchased Cell Pathways securities during the Class Period; (2) at prices alleged to have been artificially inflated by alleged false and misleading statements made by the defendants and/or by the defendants' failure to disclose material information; and (3) suffered damages as a result.

■ The adequacy requirement of Rule 23 turns on two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The inter-

---

1. The movants not named in the amended motion, Kendall Elsom, Salvatore Salibello, William Liss, Laura Liss, Jordan Liss, and Jason Liss, agreed to withdraw their previously filed applications for appointment as lead plaintiffs.

ests of the Didion plaintiffs appear well aligned with the interests of the putative class, and the Court has not been presented with any evidence of antagonism between the interests of the Didion group and the putative class. Further, the competency of counsel for the Didion plaintiffs is well established and is discussed below.

■ Having found that the Didion plaintiffs have the largest financial interest in the relief sought by the putative class and otherwise satisfy Rule 23, there is a presumption that they should be appointed lead plaintiffs. The only way the Court can not appoint them as lead plaintiffs is if Mr. Arnold and Ms. Garten rebut the presumption with proof that the Didion plaintiffs will not fairly and adequately protect the interests of the class or are subject to unique defenses that render the Didion plaintiffs incapable of adequately representing the class.

The main argument of Mr. Arnold and Ms. Garten is that the Didion plaintiffs are inadequate as lead plaintiffs because of the way they chose lead counsel. Mr. Arnold and Ms. Garten contend that there is no evidence that the Didion plaintiffs conducted any due diligence in selecting counsel, or that they raised the issue of fees or negotiated a fee agreement. Mr. Arnold and Ms. Garten argue that they should be named lead plaintiffs because they will interview law firms, rank the top three firms based on the interviews, and then hold an auction between the three firms.

The Didion plaintiffs argue that so long as the counsel selected is competent to prosecute the action vigorously, their fee agreement with counsel is not a relevant consideration in deciding whether Mr. Arnold and Ms. Garten have rebutted the presumption that the Didion plaintiffs are adequate lead plaintiffs. The Didion plaintiffs appear to be correct. The PSLRA states that the Court must appoint a lead plaintiff based on the relevant statutory criteria discussed above. After appointing the lead plaintiff, the Court

may then go on to consider the request for approval of lead counsel. But they are two separate issues. *See, e.g., In re Microstrategy Securities Litig.*, 110 F.Supp.2d 427, 438 (E.D.Va.2000). The Court will appoint as lead plaintiffs the group of Paul Didion, Sanford Goldfine, Michael Denton, and Richard Darlington.[2]

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The Didion plaintiffs have selected Berger & Montague and Schiffrin & Barroway to represent the class, and they currently seek the Court's approval of their selection.

Mr. Arnold and Ms. Garten contend that basic economic theory suggests that the current procedures used to select class counsel create an economic opportunity for lawyers to pursue high fees at the expense of their clients. At the hearing on the motions, Mr. Arnold asserted that competitive fee arrangements are better obtained at an auction or negotiation at the beginning of the case, because the attorneys' conduct will respond to the fixed economic incentive irrespective of the outcome of the litigation. This nontraditional process enables plaintiffs "to select the firm that . . . will provide the necessary services at the least cost to the class." July 13, 2001, Hearing, p. 13; Arnold and Garten Motion at 4.

The Court finds that the procedure followed by the lead plaintiffs to select counsel will adequately protect the interests of the class. Paul Didion selected Berger & Montague as counsel through his personal attorney. Didion Plaintiffs' Reply Mem., Ex. E. Mr. Didion requested that his personal attorney review the initial complaint that was filed by Berger & Montague on behalf of G.K.P. Trading LLC and Robert Haldeman, and retain capable securities class action litigators on his behalf. He stated that his personal attorney interviewed several law firms

---

**2.** Putting aside the statutory presumption in favor of the Didion plaintiffs, the Court would have serious concerns about appointing Mr. Arnold and Ms. Garten as lead plaintiffs. In their written and oral arguments, they have questioned the

facts and conclusions of the complaint and expressed a concern about the impact of the case on the company defendant. The Court could not find that they would adequately represent the interests of the class.

before recommending Berger & Montague. Mr. Didion's personal attorney made this recommendation because the firm had conducted a thorough investigation and because of the firm's extensive experience and success in class actions.

Mr. Darlington selected Berger & Montague after in-depth discussions with Sherrie R. Savett, a member of the firm, a review of the G.K.P. complaint filed by Berger & Montague, and a review of the firm's biography, which also describes the firm's experiences and success in cases involving similar claims. Didion Plaintiffs' Reply Mem., Ex. F.

Similarly, Messrs. Goldfine and Denton selected Schiffrin & Barroway, another firm with extensive experience and success in the securities litigation field, after reading notices which disclosed that the firm had filed complaints against the defendants in this action, and after consultation with partners of the firm. Didion Plaintiffs' Reply Memorandum, Ex. G, I.

The competence of Berger & Montague and Schiffrin & Barroway has been well established. Berger & Montague has engaged in the practice of complex litigation for thirty years. The firm has developed a national practice handling major litigation in the fields of securities, antitrust, and mass tort law. Berger & Montague has experience in successfully litigating cases against biotechnology companies involving misrepresentations about the results of clinical trials and the likelihood of FDA approval of drugs, including several cases in this district. Sherrie R. Savett was praised by Judge Dalzell for her conduct in one of those actions. At the final settlement hearing in *In re U.S. Bioscience Securities Litig.*, Civ. No. 92–0678 (E.D.Pa.), approving a $15.25 million settlement of a biotechnology securities class action in which Berger & Montague served as lead counsel, Judge Dalzell described Ms. Savett's services as "superb."

Schiffrin & Barroway has also specialized in securities and consumer class action litigation for over fourteen years. The firm has represented consumers, and individual and institutional shareholders in class actions pending in state and federal courts throughout the United States. Schiffrin & Barroway have also been praised for its conduct of class actions, specifically in *Henry v. Sears,* Case No. 98 C 4110 (N.D.Ill.1999), and in *Dana v. Trans Lux Corp. et. al.,* C.A. No. 9755 (Del. Ch.1989).

■ Mr. Arnold and Ms. Garten request that should the Court appoint the Didion plaintiffs as lead plaintiffs, the Court order an auction to be conducted or a fee to be negotiated at the beginning of the case. During the process of retaining counsel, the Didion plaintiffs and their counsel agreed that the plaintiffs will determine what fees counsel may apply for at the conclusion of the lawsuit, when the results of the case are known. The Court will not order an auction or any other negotiations of fees at this time. A few cases decided under PSLRA have ordered auctions, but the Court has not been presented with any evidence or argument that the auction process has resulted in lower fees or greater benefits to the putative class. *See* Andrew K. Niebler, *In Search of Bargained–For Fees for Class Action Plaintiffs' Lawyers: The Promise and Pitfalls of Auctioning the Position of Lead Counsel,* 54 Bus.Law 763, 774–80 (1999) (discussing the advantages and disadvantages of lead counsel auctions). The Court finds that the Didion plaintiffs' proposed procedure, subject to the ultimate review and approval by the Court, will adequately protect the interests of the class.

Mr. Arnold and Ms. Garten also requested that should the Court approve the selection of co-lead counsel by the Didion plaintiffs, the Court monitor the time and expenses spent by counsel throughout the litigation rather than waiting until the end of the case when the Court may be presented with a request for attorneys' fees. The Court does not think that such a procedure would be in the interest of the putative class.

In affidavits attached to their motion, Paul Didion, Richard Darlington, Michael Denton, and Sanford Goldfine each state that they have all "agreed to meet periodically, by telephone or otherwise, to monitor the activities of counsel and make important decisions as needed." Didion Plaintiffs' Reply Mem., Ex. E, F, G, I. All four of the Didion plain-

tiffs are sophisticated businessmen who share a substantial and compelling interest in vigorously prosecuting the claims on behalf of the class. Their promises to monitor counsel, work collectively, and share responsibility for the prosecution of the action, coupled with their status as the movants with the largest financial losses, make the Didion plaintiffs capable of monitoring counsel without court involvement at this stage in the litigation. *See In re Razorfish, Inc. Securities Litig.*, 143 F.Supp.2d 304, 307 (S.D.N.Y. 2001) (the theory behind the PSLRA lead plaintiff provision was that if an investor with a large financial stake in the litigation was made lead plaintiff, he or she would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's actions).

An appropriate order follows.

### ORDER

AND NOW, this 27th day of July, 2001, upon consideration of the Joint Motion of Jonathan I. Arnold and Anita W. Garten to Serve as Co–Lead Plaintiffs (Docket # 3); and Plaintiffs Didion, Goldfine, Denton, and Darlington's Amended Motion For Appointment as Lead Plaintiffs and For Approval of Selection of Co–Lead Counsel (Docket # 8); all responses and replies thereto, and after a hearing, IT IS HEREBY ORDERED for the reasons stated in a memorandum of today's date that: (1) the Joint Motion of Mr. Arnold and Ms. Garten is DENIED; and (2) the Amended Motion by Messrs. Didion, Goldfine, Denton and Darlington is GRANTED. IT IS ALSO HEREBY ORDERED THAT:

I. *APPOINTMENT OF LEAD PLAINTIFFS AND CO–LEAD COUNSEL*

1. The following lead plaintiffs and class members are appointed lead plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"): Paul Didion, Sanford Goldfine, Michael Denton, and Richard Darlington.

2. The law firms of Berger & Montague, P.C. ("Berger & Montague") and Schiffrin & Barroway, LLP ("Schiffrin & Barroway") are appointed Co–Lead Counsel.

3. With the approval of the Court, Co–Lead Counsel shall assume and exercise the following powers and responsibilities:

   a. To coordinate the briefing and argument of motions;

   b. To coordinate the conduct of written discovery proceedings;

   c. To coordinate the examination of witnesses in depositions;

   d. To coordinate the selection of counsel to act as spokesperson at pretrial conferences;

   e. To call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

   f. To conduct all settlement negotiations with counsel for the defendants;

   g. To coordinate and direct the preparation for trial, and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;

   h. To receive orders, notices, correspondence and telephone calls from the Court on behalf of all plaintiffs, and to transmit copies of such orders, notices, correspondence and memoranda of such telephone calls to plaintiffs' counsel; and

   i. To supervise any other matters concerning the prosecution or resolution of the Consolidated Action.

4. With respect to scheduling and/or procedural matters, defendants' counsel may rely upon all agreements with Co–Lead counsel.

5. No pleadings or other papers shall be filed or discovery conducted by any plaintiff except as directed or undertaken by Co–Lead Counsel.

6. Counsel in any related action that is consolidated with the Consolidated Action shall be bound by this organizational structure of plaintiffs' counsel.

## II. *SERVICE OF PLEADINGS AND OTHER PARTIES*

1. Service by the defendants on plaintiffs of any papers shall be deemed to be complete for all purposes when a copy is served on Co–Lead Counsel.

## III. *DOCUMENT PRESERVATION*

1. During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information, and materials such as computerized data and electronic mail, containing information which is relevant to the subject matter of the pending litigation.

All deadlines set in the Court's prior order dated May 14, 2001, are still in effect.