## In re VICURON PHARMACEUTICALS, INC. SECURITIES LITIGATION.

### No. CIV.A. 04–2627.

United States District Court,
E.D. Pennsylvania.

Oct. 7, 2004.

Colleen C. Curran, John N. Childs, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, for Plaintiff.

Jay A. Dubow, Robyn D. Levitan, Wolf, Block, Schorr and Solis–Cohen L.L.P., Philadelphia, PA, for Defendants.

## MEMORANDUM

BARTLE, District Judge.

Before the court are four motions for appointment of lead plaintiff and approval of lead counsel in this consolidated putative class action securities litigation [1] brought under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. The motions have been filed by the following individuals or groups: (1) Bulmaro Vasquez, Michael Epstein, James New, and John Taylor ("Vasquez Group"); (2) Massachusetts State Guaranteed Annuity Fund, Massachusetts State Carpenters Pension Fund, and Greater Pennsylvania Carpenters Pension Fund ("Institutional Investor Group"); (3) William Rickert, Jack J. Waldman, IRA, Joel Mur, Betty Y. Kongkeo, and Judith W. Issacs ("Vicuron Lead Plaintiff Group"); and (4) Brad Staton.

The PSLRA sets forth a detailed procedure for appointment by the court of "the most adequate plaintiff" as lead plaintiff, who may then, subject to the court's approval, select and retain lead counsel to represent

---

1. The cases which have been consolidated are as follows: *Paragamian v. Vicuron Pharmaceuticals Incorporated, et al.,* Civ. A. No. 04–2627; *Taylor v. Vicuron Pharmaceuticals Inc., et al.,* Civ. A. No. 04–2685; *Security Police–Fire Professionals of Am. v. Vicuron Pharmaceuticals, Inc., et al.,* Civ. A. No. 04–2708; *Zucker v. Vicuron Pharmaceuticals Incorporated, et al.,* Civ. A. No. 04–2745; *Steketee v. Vicuron Pharmaceuticals, Inc., et al.,* Civ. A. No. 04–3365; and *Staton v. Vicuron Pharmaceuticals Inc., et al.,* Civ. A. No. 04–3422.

the class. *See* 15 U.S.C. §§ 78u–4(a)(3)(B)(ii) and (v). Under the PSLRA, there is a rebuttable presumption that:

> the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that–
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption can be rebutted:

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff–
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The PSLRA contains restrictions against professional plaintiffs. 15 U.S.C. § 78u–4(a)(3)(B)(vi). It provides:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period.

*Id.* As explained in the Conference Committee Report, the PSLRA's "most adequate plaintiff" provision was enacted to ensure that the selection of lead plaintiff and lead counsel rests on factors other than how quickly a plaintiff has filed a complaint. CONF. COMM. ON PRIVATE SEC. LITIG. REFORM ACT OF 1995, H.R. CONF. REP. NO. 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 732 (1995). Underlying the PSLRA was the concern that "professional plaintiffs who own a nominal number of shares in a wide array of public companies permit lawyers readily to file abusive securities class action lawsuits." *Id.* at 731.

The person seeking to be lead plaintiff must have "either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)."[2] 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). All movants here, by definition, satisfy this first prong.

The court next must determine which movant has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). For this analysis, "courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir.2001) (*"Cendant II"*).

Movants claim losses as follows in descending order: Institutional Investor Group—$368,287.48; Vasquez Group—$324,310; Vicuron Lead Plaintiff Group—$19,250; and Brad Staton—$10,672. The Vicuron Lead Plaintiff Group has conceded that the Vasquez Group and the Institutional Investor Group have asserted larger financial interests. *See* Vicuron Lead Plaintiff Group's response to competing lead plaintiff motions, filed Aug. 30, 2004. Brad Staton clearly does not have the largest financial interest.

Although the Institutional Investor Group has suffered the greatest financial loss, the Vasquez Group maintains that our inquiry into "largest financial interest in the relief sought by the class" must also include the number of shares purchased and the total

---

**2.** Subparagraph (A)(i) states:

> (A) Early notice to class members
>
> (i) In general
>
> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.
>
> 15 U.S.C. § 78u–4(a)(3)(A)(i).

funds expended by each putative plaintiff group. *See Cendant II,* 264 F.3d at 262. The Vasquez Group claims that it bought 59,471 shares of Vicuron common stock at a net cost of over $1,371,198 while the Institutional Investor Group bought only 40,450 shares at a net cost of $895,806. The Institutional Investor Group counters that the size of its financial loss is greater and outweighs the other two factors.

We find no explicit guidance on the question of relative weight accorded to each of the three factors articulated in *Cendant II,* 264 F.3d at 262. At least three other decisions within the Eastern District of Pennsylvania have determined the lead plaintiff based on a measure of greatest loss. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.,* No. Civ. A. 04–0265, 2004 WL 1221353 (E.D.Pa. June 3, 2004); *Janovici v. DVI, Inc.,* 2003 WL 22849604; *In re Cell Pathways, Inc., Sec. Litig. II,* 203 F.R.D. 189 (E.D.Pa.2001). However, there is no discussion in those cases of the other *Cendant II* factors and the Vasquez Group cites none. The Vasquez Group itself focused solely on financial loss in initially arguing it had the largest financial loss in its motion to be appointed lead plaintiff. *See* Vasquez Group's notice of motion to consolidate actions, to be appointed lead plaintiff and for approval of lead plaintiff's selection of lead counsel, filed Aug. 16, 2004.

 While the differences in the numbers for the Vasquez Group and those for the Institutional Investor Group are not particularly great, we agree that the amount of financial loss is the most significant of these elements. We also note that the three factors outlined in *Cendant II* are to be considered "among other things." *Cendant II,* 264 F.3d at 262. *Id.* There is a fourth factor which we cannot overlook. Under the PSLRA, institutional investors are considered preferred lead plaintiffs. H.R. CONF. REP. No. 104–369, 1995 U.S.C.C.A.N. at 730–34. The Conference Committee Report states that the PSLRA sought "to increase the likelihood that institutional investors will serve as lead plaintiffs." *Id.* at 732–33. *See also In re Cendant Corp.,* 260 F.3d 183, 197 (3d Cir.2001) ("*Cendant I*"); *Janovici v. DVI, Inc.,* No. Civ. A. 2:03–CV04795–LD, 2003 WL 22849604, *4 (E.D.Pa. Nov.25, 2003); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182

F.R.D. 42, 46 (S.D.N.Y.1998). According to the Report, "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. CONF. REP. No. 104–369, 1995 U.S.C.C.A.N. at 733. Further, "with pension funds accounting for $4.5 trillion or nearly half of the institutional assets, in many cases the beneficiaries of pension funds—small investors—ultimately have the greatest stake in the outcome of the lawsuit." *Id.* In contrast to the Institutional Investor Group, the Vasquez Group consists of four individuals, albeit with large holdings, and no institutions. Weighing all four factors including the size of the financial loss, the scales tip in favor or the Institutional Investor Group as the lead plaintiff.

 The PSLRA also provides that any person or group seeking to be the lead plaintiff must satisfy the requirements for class representative as set forth in Rule 23 of the Federal Rules of Civil Procedure. Thus, we must evaluate whether the Institutional Investor Group has made a prima facie showing of the typicality and adequacy requirements of that rule. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); Fed.R.Civ.P. 23; *Cendant II,* 264 F.3d at 263. In our inquiry as to the typicality requirement, we must decide whether the circumstances of the movant "are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *Cendant II,* 264 F.3d at 265 (citing *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988) (internal brackets omitted)). In assessing adequacy, we must determine whether that movant "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Id.* (citing *Hassine,* 846 F.2d at 179 (internal brackets omitted)). The adequacy determination is made in context with the movant's choice of lead counsel. *Id.* However, that choice should negatively impact our determination of adequacy at this early stage only if the proposed lead counsel is "so deficient as to demonstrate that it will

not fairly and adequately represent the interests of the class." *Id.* at 266.

The Institutional Investor Group maintains its claims are typical of the class because they arise from the same series of events and are based on the same legal theories as those of all class members. This movant has also made a prima facie showing that it will fairly and adequately represent the class. Having asserted the typicality of its claims, it has already taken steps towards protecting the interests of the class by hiring competent and experienced counsel to prosecute those claims. There is no evidence of conflict between this plaintiff and other class members. The Institutional Investor Group has chosen Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel and Mark S. Henzel as liaison counsel. Lerach Coughlin has served in this capacity in numerous securities class actions and both it and Mark Henzel have substantial experience in such cases. They are highly qualified to serve as lead and liaison counsel respectively.

■ The Vasquez Group urges that the Institutional Investor Group is precluded from serving as lead plaintiff in this matter because the Massachusetts State Guaranteed Annuity Fund and the Massachusetts State Carpenters Pension Fund, two of the three members of the Institutional Investor Group, have served as lead plaintiffs more than five times in the past three years and should be treated as "professional plaintiffs" under § 78u–4(a)(3)(B)(vi). As stated in the PSLRA, "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi). The PSLRA does not absolutely prohibit as lead plaintiff any person who fits this description. We emphasize that this provision is to be applied "[e]xcept as the court may otherwise permit, consistent with the purposes of this section." *Id.* Both members of the Institutional Investor Group to which the Vasquez Group objects are institutional investors. We have discussed the purposes of the PSLRA above, as set forth in the Conference Committee Report. H.R. CONF. REP. NO. 104–369, 1995 U.S.C.C.A.N. at 730–48. The Report made it quite clear that the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors. It provides:

Institutional Investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years.

H.R. CONF. REP. NO. 104–369, 1995 U.S.C.C.A.N. at 734. We will not disqualify the Institutional Investor Group as a professional plaintiff.

The Vasquez Group further asserts that Thomas Harrington, the Chairman of the Massachusetts State Guaranteed Annuity Fund and the Massachusetts State Carpenters Pension Fund, has served as a fiduciary for these lead plaintiffs in excess of five securities class actions in the past three years. According to the Vasquez Group, this precludes the Institutional Investor Group from being appointed lead plaintiff in this case. We disagree. As we have discussed above, the PSLRA favors institutional investors seeking to serve as lead plaintiff. *See* H.R. CONF. REP. NO. 104–369, 1995 U.S.C.C.A.N. at 734. We do not think that the PSLRA requires us to disqualify them as lead plaintiffs simply because they have had the same individual fiduciary on those occasions. Section 78u–4(a)(3)(B)(vi) allows the court to appoint the same lead plaintiff in more than the number of class actions set forth in this subsection where, as here, it is consistent with the purposes of the PSLRA to do so.

We will appoint the Institutional Investor Group, comprised of the Massachusetts State Guaranteed Annuity Fund, the Massachusetts State Carpenters Pension Fund, and the Greater Pennsylvania Carpenters Pension Fund, as lead plaintiff and will approve Lerach Coughlin Stoia Geller Rudman & Robbins LLP as its choice of lead counsel and Mark S. Henzel as liaison counsel.

## ORDER

AND NOW, on this 7th day of October, 2004, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Massachusetts State Guaranteed Annuity Fund, Massachusetts State Carpenters Pension Fund, and Greater Pennsylvania Carpenters Pension Fund ("Institutional Investor Group") for appointment as lead plaintiff and Mark S. Henzel as liaison counsel is GRANTED;

(2) the motion of the Institutional Investor Group for approval of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel is GRANTED;

(3) the motion of the Vasquez Group to be appointed lead plaintiff and for approval of its selection of lead counsel is DENIED;

(4) the motion of the Vicuron Lead Plaintiff Group to be appointed lead plaintiff and for the approval of its selection of lead and liaison counsel is DENIED; and

(5) the motion of Brad Staton for appointment as lead plaintiff and approval of his selection of lead counsel is DENIED.