**OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, et al., Plaintiffs,**

v.

**FANNIE MAE a/k/a Federal National Mortgage Association, et al., Defendants.**

**No. 04–CV–1106.**

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 23, 2005.

Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley Co., LPA, Alan J. Statman, James Rubin Cummins, Jeffrey Phillip Harris, Statman, Harris, Siegel & Eyrich, Michael Ryan Barrett, Barrett & Weber, Cincinnati, OH, for Plaintiffs.

James A. King, Porter, Wright, Morris & Arthur, Columbus, OH, for Defendants.

### ORDER APPOINTING LEAD PLAINTIFFS AND COUNSEL [1]

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs', Ohio Public Employees Retirement System ("OPERS") and State Teach-

---

1. Initially, when Plaintiffs filed their Motion for Lead Plaintiffs and Approval of Selection of Counsel with this Court, Cominvest Asset Management GmbH ("Cominvest") was also vying for Lead Plaintiff appointment in this action. Additionally, the Ohio Funds, Cominvest, and Cafco–Large Cap Funds, L.P. and Jeff Pechan ("Cafco–Pechan") were competing movants for Lead Plaintiff in the consolidated action in the District of Columbia before Judge Richard J. Leon, *In re: Fannie Mae Securities Litigation,* Case No. 04–1639. On January 13, 2005, Judge Leon issued a Memorandum Opinion and Order in which he appointed the Ohio Funds as Lead Plaintiffs and denied the competing movants' motions. *In re: Fannie Mae Securities Litigation,* at 2. Subsequently, the Ohio Funds became the only movants for Lead Plaintiffs in the present action. (Cominvest's Notice of Withdrawal at 1 (filed Jan. 18, 2005) (withdrawing its Motion to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel in the case pending before this Court)). This Court appoints the Ohio Funds as Lead Plaintiffs in

ers Retirement System of Ohio ("STRS" and collectively, together with OPERS, the "Ohio Funds"), Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel.[2] Plaintiffs seek appointment as Lead Plaintiffs in this federal securities fraud class action in which OPERS, STRS, and BWC, on behalf of themselves and all others similarly situated, filed suit against the Federal National Mortgage Association ("Fannie Mae" or the "Company"), Franklin D. Raines, Timothy Howard, and Leanne G. Spencer (collectively, the "Defendants"). For the reasons set forth herein, the Court **GRANTS** Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel [Docket No. 3].

## II. SUMMARY OF PENDING ACTIONS AND UNDER-LYING FACTS

Accepting the facts as stated by the Plaintiffs, Fannie Mae was chartered by Congress to facilitate the flow of low-cost mortgage capital to increase the availability and affordability of home ownership to low-, moderate-, and middle-income Americans. Fannie Mae is the nation's largest source of funds for mortgage lenders. Although chartered by Congress, Fannie Mae is a private, shareholder-owned corporation, and its common stock is traded on the New York Stock Exchange (the "NYSE").

The Ohio Funds comprise one of many[3] groups of plaintiffs who filed securities

---

the case sub judice, but issues a separate Order for purposes of explaining its rationale for selecting the Ohio Funds as the most adequate plaintiffs. See *infra* pp. 7–9 for a discussion of the "most adequate plaintiff."

2. On November 22, 2004, when the Plaintiffs filed their Motion for Appointment as Lead Plaintiffs and Approval of Section of Counsel, a third fund, Ohio Bureau of Workers' Compensation ("BWC"), comprised one of the three Ohio plaintiffs seeking joint approval as Lead Plaintiffs. (Pls.' Lead Pls. Mot. at 1 (filed Nov. 22, 2004)). Yet, on December 14, 2004, BWC withdrew without prejudice its request for appointment as joint Lead Plaintiff with OPERS and STRS because during the class period of January 13, 2000 to September 22, 2004, BWC did not sustain a financial loss. (BWC's Notice of Withdrawal at 2 (filed Dec. 14, 2004)). Cominvest objected to BWC's withdrawal, but "the withdrawal does not violate the spirit of the PSLRA [Private Securities Litigation Reform Act of 1995]." *In re: Fannie Mae Sec. Litig.*, at 1 n. 2 (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D.Tex.2002)).

3. In addition to the case sub judice, separate plaintiffs filed two securities fraud actions in the United States District Court for the Southern District of New York: *Gregory v. Federal National Mortgage Ass'n*, Case No. 04–CV–7574 (Judge Hellerstein) and *Berlien v. Federal National Mortgage Ass'n*, Case No. 04–CV–

8066 (Judge Hellerstein), and additional plaintiffs filed ten securities fraud actions in the United States District Court for the District of Columbia: *Vinci v. Federal National Mortgage Ass'n*, Case No. 04–CV–1639 (Judge Leon); *Friends of Ariel Center for Policy Research v. Fannie Mae*, Case No. 04–CV–1645 (Judge Leon); *Schafer v. Federal National Mortgage Ass'n*, Case No. 04–CV–1659 (Judge Leon); *Peterson v. Federal National Mortgage Ass'n*, Case No. 04–CV–1676 (Judge Leon); *Pinuchuck v. Federal National Mortgage Ass'n*, Case No. 04–CV–1686 (Judge Leon); *Lesk v. Federal National Mortgage Ass'n*, Case No. 04–CV–1747 (Judge Leon); *Flynn v. Fannie Mae*, Case No. 04–CV–1843 (Judge Leon); *Healy v. Federal National Mortgage Ass'n*, Case No. 04–CV–1946 (Judge Leon); *Brauer v. Federal National Mortgage Ass'n*, Case No. 04–CV–2004 (Judge Leon); *Baker v. Federal National Mortgage Ass'n*, Case No. 04–CV–2025 (Judge Leon).

On December 3, 2004, the plaintiffs in all District of Columbia actions with the exception of *Vinci v. Federal National Mortgage Ass'n*, Case No. 04–CV–1639 and *Flynn v. Fannie Mae*, Case No. 04–CV–1843 voluntarily dismissed their complaints. Also, on December 13, 2004, both of the plaintiffs in the Southern District of New York actions, voluntarily dismissed their complaints without prejudice. Finally, on December 16, 2004, Judge Leon consolidated the two remaining District of Columbia actions "for all purposes through

fraud lawsuits against Fannie Mae, and certain of its executive officers, on behalf of the purchasers, who purchased Fannie Mae's publicly traded common stock at inflated prices during overlapping class periods,[4] and sustained damages in connection with those purchases. In their complaint (the "Complaint"), Plaintiffs and BWC allege that Defendants issued materially false and misleading financial reports and statements during the class period of October 11, 2000 to September 22, 2004 to mislead investors into believing that Fannie Mae was a stable investment with consistent earnings growth. At the time these statements were made, however, Defendants allegedly knew or recklessly disregarded that Fannie Mae's earnings were highly volatile. Also, Defendants allegedly misapplied Generally Accepted Accounting Principles (GAAP) to manipulate Fannie Mae's earnings to meet Wall Street analysts' projected earnings for the Company.

Fannie Mae's regulator, the Office of Federal Housing Enterprise Oversight (the "OFHEO"), investigated Fannie Mae and recently issued a Report of Findings to Date on Special Examination of Fannie Mae (the "OFHEO Report"). On September 22, 2004, before the market opened, the Presiding Director of Fannie Mae's Board of Directors (the "Fannie Mae Board" or the "Board"), Ann Korologos, issued a public statement disclosing that the OFHEO had discovered several instances of the Company's misconduct.[5] Ms. Korologos also reported that the Securities and Exchange Commission (the "SEC") was conducting an informal inquiry that includes issues raised in the OFHEO Report. On that same day, Fannie Mae's common stock, which opened at $74.18 on the NYSE, fell $4.18 to $70.00, and closed out the day at $70.69, on trading volume of over 17.7 million shares.

After the close of the market on September 22, 2004, OFHEO publicly released its letter that summarized the report to the Fannie Mae Board, in addition to the entire 198–page report. In its letter to the

---

final judgment." *In re: Fannie Mae Sec. Litig.*, at 1; Stipulated Order of Consolidation at 2.

**4.** In their Motion, Plaintiffs referenced a class period of October 11, 2000 to September 22, 2004 which "was selected by nine of the thirteen original [securities] actions filed against Fannie Mae," including the OPERS, STRS, and BWC's action and the District of Columbia case, *Vinci v. Federal National Mortgage Association*, Case No. 04–CV–1639. (BWC's Notice of Withdrawal at 1 n. 1). Two of the thirteen cases asserted a class period of January 13, 2000 to September 22, 2004, and the remaining two cases proposed class periods of October 16, 2003 to September 22, 2004 and October 16, 2000 to September 22, 2004. (Pls.' Mem. Opp'n at 2–3 n. 4 (filed Dec. 10, 2004)). Plaintiffs have calculated their financial loss of approximately $12,896,022 based upon the class period of January 13, 2000 to September 22, 2004.

**5.** According to the Plaintiffs, the OFHEO noted that:

Fannie Mae (1) applied accounting methods and practices that do not comply with GAAP in accounting for the enterprise's derivatives transactions and hedging activities, (2) employed an improper "cookie jar" reserve in accounting for amortization of deferred price adjustments under GAAP, (3) tolerated related internal control deficiencies, (4) in at least one instance deferred expenses apparently to achieve bonus compensation targets, and (5) maintained a corporate culture that emphasized stable earnings at the expense of accurate financial disclosures.

Also, in its report to the Fannie Mae Board, the OFHEO commented that "the matters detailed in this report are serious and raise doubts concerning the validity of previously reported financial results, the adequacy of regulatory capital, the quality of management supervision, and the overall safety and soundness of the Enterprise." (Pls.' Mem. Supp. Lead Pls. Mot. at 7–8 (filed Nov. 22, 2004)).

Fannie Mae Board, OFHEO informed the Board that its "findings cannot be explained as mere differences in interpretation of accounting principles, but clear instances in which management sought to misapply and ignore accounting principles for the purposes of meeting investment analyst expectations; reducing volatility in reporting earnings; and enabling fragmented processes and systems, and an ineffective controls environment to exist." (Pls.' Mem. Supp. Lead Pls. Mot. at 8 (filed Nov. 22, 2004)). In a subsequent meeting with reporters on September 23, 2004, OFHEO officials stated that they believe that Fannie Mae executives intentionally manipulated earnings to meet Wall Street analysts' expectations, and that the vast majority of Fannie Mae's $1 trillion derivatives portfolio was "tainted," meaning that those hedge relationships would likely get "unwound" if Fannie Mae restated past earnings so that gains and losses that previously had been recorded on Fannie Mae's balance sheet would be booked under income. (Pls.' Mem. Supp. Lead Pls. Mot. at 8 (filed Nov. 22, 2004)). Since this disclosure, the Department of Justice has initiated a criminal investigation into the activities of Fannie Mae, and the SEC has instituted a formal inquiry.[6]

On September 23, 2004, Mr. Vincent Vinci filed the first of several federal securities fraud class actions against Defendants in the United States District Court for the District of Columbia, alleging, *inter alia*, that Defendants engaged in a "fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Fannie Mae securities by disseminating materially false and misleading statements and/or concealing material adverse facts."[7] (*Vinci* Compl. ¶ 17). Upon filing Mr. Vinci's complaint, his counsel also published the required notice to members of the purported class, which advised members of the existence of the lawsuit and described the claims asserted therein, in accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). 15 U.S.C. § 78u–4(a)(3)(A)(i). The notice also advised class members of their right to file a motion for lead plaintiff no later than November 22, 2004. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II) ("[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to

---

6. On November 15, 2004, Fannie Mae filed a Form NT 10–Q with the SEC in which it reported that:

(1) It could not timely file its Form 10–Q for the September 30, 2004 quarter because its independent auditor would not sign off on the report until the completion of certain procedures and investigations.

(2) It estimates that it will have to post an after-tax loss of $9 billion if the SEC determines that it has been accounting improperly for derivatives under FAS 133.

(3) It estimates that it would be required to record in earnings a net cumulative after-tax loss of approximately $ 26 million as of September 30, 2004, if it is determined that its current accounting under FAS 91 was not in compliance with GAAP.

(4) It admitted that its methodology for performing calculations to measure the catch-up adjustment required by FAS 91 for balance sheet dates in the periods 2001 through 2002 was not consistent with GAAP and that the company will make adjustments to prior periods if and to the extent material.

(Pls.' Mem. Supp. Lead Pls. Mot. at 8–9 (filed Nov. 22, 2004)).

7. In *Vinci*, the plaintiff further described the "fraudulent scheme" as one in which Fannie Mae allegedly: "(i) deceived the investing public regarding Fannie Mae business, operations, management and the intrinsic value of Fannie Mae securities; and (ii) caused Plaintiff and other members of the Class to purchase Fannie Mae securities at artificially inflated prices." For a discussion of the *Vinci* plaintiff's characterization of Fannie Mae's purported accounting misconduct see *Vinci* Compl. ¶ 68.

serve as lead plaintiff of the purported class.").

In the case sub judice, Plaintiffs aver that Defendants engaged in a course of conduct to artificially inflate the prices of Fannie Mae common stock in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder.[8] As previously set forth, on January 13, 2005, Judge Leon appointed Plaintiffs as Lead Plaintiffs, and their counsel, Waite, Schneider, Bayless & Chesley Co., L.P.A. and Berman DeValerio Pease Tabacco Burt & Pucillo as Co–Lead Counsel.

This Court has reviewed Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel in the case pending before this Court, in addition to all relevant court documents. Accordingly, this matter is ripe for adjudication.

### III. ANALYSIS

#### A. Legal Framework of the PSLRA

The PSLRA requires that the Court appoint a lead plaintiff during the initial stages of litigation. If an action has been consolidated, the court shall appoint a lead plaintiff "as soon as practicable" after the consolidation. 15 U.S.C. § 78u–4(a)(3)(B)(ii). The PSLRA further dictates that the chosen lead plaintiff be able to represent adequately the interests of the class members.

> [T]he court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class the court determines to be most capable of adequately representing the interests of class members (hereinafter in this paragraph referred to as the "most adequate plaintiff").

15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA requires that any plaintiff seeking to be lead plaintiff file a certification that must state the following:

> (i) ... the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) ... the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title;
>
> (iii) ... the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

15 U.S.C. § 78u–4(a)(2)(A)(i)–(iii).

The certification must also include a list of the plaintiff's transactions in the security, a list of all actions in which that plaintiff has sought to serve as lead plaintiff in the past three years, and a statement that the plaintiff will not accept payment for serving as a representative party in excess of plaintiff's pro rata share of any recovery. 15 U.S.C. § 78u–4(a)(2)(A)(iv)–(vi).

In the case sub judice, both Plaintiffs have submitted the requisite certifications that are in compliance with 15 U.S.C. § 78u–4(a)(2)(A)(i)–(vi). (Decl. James R. Cummins, Exhibit B).

Once it is established that a plaintiff either has filed a complaint or has moved for appointment as lead plaintiff within the strictures of the PSLRA, to determine which candidate should be Lead Plaintiff, the Court calculates which of the candidates has the largest financial interest, and then decides whether that candidate meets the typicality and adequacy requirements of FED.R.CIV.P. 23(a). *See In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir.2002) (explaining this second step within the PSLRA's three-step process for determin-

---

**8.** Plaintiffs further submit that this allegation is common to the related securities fraud actions that have been filed to date. (Pls.' Mem. Supp. Lead Pls. Mot. at 9–10 (filed Nov. 22, 2004)). See *supra* note 3 for a list of all related actions.

ing lead plaintiff). Indeed, the statute presumes that the most adequate plaintiff is the person or group of persons that has the largest financial interest in the relief sought by the class and that otherwise satisfies the requirements of Rule 23.

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[9]

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Although it is presumed that the candidate who has the largest financial interest and who meets the Rule 23(a) requirements should be the lead plaintiff, this presumption can be overcome by a showing that the candidate will be subject to unique defenses or is otherwise inadequate. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### B. Timely Filing of Lead Plaintiff Motion

In the case sub judice, Plaintiffs timely moved to be appointed as Lead Plaintiffs on November 22, 2004. Therefore, Plaintiffs are in compliance with 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa).

### C. Largest Financial Interest[10]

Plaintiffs are the only candidates for Lead Plaintiffs, and hence they have the largest financial interest with an approximate loss of $12,896,022 during the proposed class period of January 13, 2000 to September 22, 2004.[11] Thus, Plaintiffs have satisfied 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

---

9. Federal Rule of Civil Procedure 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) numerosity; (2) common questions of law or fact; (3) typicality of claims or defenses; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R.CIV.P. 23(a). The third and fourth prerequisites, typicality and adequacy, are of primary importance with regard to lead plaintiff determinations. *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *6 (N.D.Ill. Aug. 11, 1997) (citation omitted).

10. The Court notes that any discussion about loss in this Order is limited to the Lead Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel, and does not impact the ultimate questions of liability and damages. *See generally In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at

*17 (N.D.Ohio May 12, 2004) (stating that the lead plaintiff analysis "is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages").

11. Plaintiffs calculated their approximate losses using the first in, first out ("FIFO") methodology. (Pls.' Reply Mem. at 4, 6 n. 9 (filed Dec. 14, 2005)). The Court employs the FIFO methodology for the "immediate narrow purpose" of evaluating Plaintiffs' approximate losses. *Thompson v. Shaw Group Inc.*, No. Civ.A.04–1685, 2004 WL 2988503, at *5 (E.D.La. Dec. 14, 2004). Nevertheless, the Court notes that this use of FIFO in no way evinces a modicum of approval of the methodology. *Id.; see generally In re Comdisco Sec. Litig.*, No. 01 C 2110, 2004 WL 905938, at * 2 (N.D.Ill. Apr. 26, 2004) (dispelling the myth that the Internal Revenue Service's use of FIFO should dictate its use in securities actions).

### D. Rule 23—Typicality and Adequacy of Representation

Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a).

■ Only two of the four prerequisites, typicality and adequacy, directly address the personal characteristics of class representatives. *See Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *6 (N.D.Ill. Aug. 11, 1997) (focusing the inquiry on typicality and adequacy). Furthermore, at this stage in the proceedings, Plaintiffs need only make a prima facie showing that they meet the typicality and adequacy prerequisites of Rule 23. *In re Cendant Corp. Litig.*, 264 F.3d 201, 263–64 (3d Cir.2001).

■ The typicality requirement of FED. R.CIV.P. 23(a)(3) is fulfilled if the prospective lead plaintiff's claims arise out of the same course of conduct or series of events, and are based on the same legal theory as the other members of the class. *In re American Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir.1996) ("[A] Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (citations omitted).

■ A plaintiff can show that it fairly and adequately represents the interests of the class, pursuant to Rule 23(a)(4), if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation. *In re CMS Energy Sec. Litig.*, No. 02–CV–72004–DT, slip op. at 5 (E.D.Mich. Nov. 14, 2002) (applying these two factors).

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent a putative class, subject to court approval. 15 U.S.C. 78u–4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class. *See Cavanaugh*, 306 F.3d at 733 ("[T]he district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.") (citation omitted). The presumption that a lead plaintiff meets the typicality and adequacy requirements can be rebutted by a showing that the plaintiff is, in fact, not adequate or will be subject to unique defenses. *See, e.g., In re Network Assoc., Inc. Sec. Litig.*, 76 F.Supp.2d 1017, 1029 (N.D.Cal.1999) (holding presumptive lead plaintiff inadequate due to unrelated fraud investigation).

■ In the present action, Plaintiffs assert claims that appear to arise out of the same course of conduct or series of events as alleged by other members of the purported class, and such claims are based on the same legal theories as the other members of the purported class. Specifically, Plaintiffs state that, they, like all class members, (1) purchased Fannie Mae common stock at artificially inflated prices during the class period,[12] and suffered

---

12. This particular "class period" began on October 11, 2000 and ended on September 22, 2004.

damages in connection with such purchases; (2) relied upon the integrity of the market in making such purchases; (3) have claims that arise from the same alleged misrepresentations and omissions by Defendants; and (4) have identical legal claims in that all plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10–b(5) promulgated thereunder. (Pls.' Mem. Supp. Lead Pls. Mot. at 14 (filed Nov. 22, 2004)).

With regard to the adequacy requirement under Rule 23(a)(4), Plaintiffs contend that they have no interests antagonistic to those of the class. (Pls.' Mem. Supp. Lead Pls. Mot. at 15 (filed Nov. 22, 2004)). According to Plaintiffs, they have suffered damages "in the same way as the other class members as a result of buying Fannie Mae stock at artificially inflated prices." (Pls.' Mem. Supp. Lead Pls. Mot. at 15 (filed Nov. 22, 2004)). Also, Plaintiffs assert that their chosen counsel, Waite, Schneider, Bayless & Chesley Co., L.P.A. (proposed Lead Counsel) and Berman DeValerio Pease Tabacco Burt & Pucillo (proposed Co–Lead Counsel) possess the requisite expertise and experience necessary to handle a case of this magnitude and complexity. (Pls.' Mem. Supp. Lead Pls. Mot. at 15–17 (filed Nov. 22, 2004)).

The Court finds that Plaintiffs have sufficiently met the typicality and adequacy requirements. Plaintiffs' claims are typical of the putative class' claims, their interests are not antagonistic to the class, and their chosen counsel are duly qualified and competent. The Court also notes that Plaintiffs are institutional investors, which comports with the PSLRA's expressed preference for such lead plaintiffs. The

PSLRA's legislative history explains: "with pension funds accounting for $4.5 trillion or nearly half of the institutional assets, in many cases the beneficiaries of pension funds—small investors—ultimately have the greatest stake in the outcome of the lawsuit." H.R. Conf. Rep. No. 104–369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also In re Vicuron Pharm. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D.Pa.2004) (holding that one candidate's status as a pension fund tipped the scales in favor of its appointment as lead plaintiff); *see also In re Royal Ahold N.V. Sec. & Erisa Litig.*, 219 F.R.D. 343, 350–51 (D.Md.2003) (noting that one candidate satisfied the adequacy condition, in part, because it was a "large sophisticated financial investment institution with the resources to support a long and complex litigation"). Likewise, the Court determines that Plaintiffs are well-grounded and sophisticated institutional investors that can commit substantial resources to this litigation.

Because Plaintiffs have filed a Lead Plaintiffs motion in a timely fashion, demonstrated that they have the largest financial interest at stake, and they have satisfied the adequacy and typicality requirements of FED.R.CIV.P. 23, the Plaintiffs are entitled to a presumption that they are the most adequate plaintiffs. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Additionally, because no purported class member has adduced proof that the Ohio Funds will not "fairly or adequately protect the interests of the class," or are subject to unique defenses, the Court holds that the Ohio Funds are the most adequate plaintiffs in the securities fraud class action pending before this Court.[13] 15 U.S.C.

---

13. This Court finds that the former lead plaintiff movants, Cominvest and Cafco–Pechan, did not establish that the Ohio Funds are subject to unique defenses or otherwise inadequate. *See In re: Fannie Mae Securities Litigation,* 04–CV–1639, at 4–7 (determining that

Cominvest and Cafco–Pechan's arguments that the Ohio Funds miscalculated their financial losses are "irrelevant" for purposes of rebutting the presumption that the Ohio Funds are the most adequate plaintiffs; re-

§ 78u–4(a)(3)(B)(iii)(II).

### IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS** the Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel [Docket No. 3].

**IT IS SO ORDERED.**

jecting Cominvest's assertion that the Ohio Funds' lead plaintiff status in the Freddie Mac securities action render the Ohio Funds atypical representatives that are subject to inherent conflicts because Cominvest failed to substantiate its claims; dismissing Cominvest's contention that the Ohio Treasurer's Office's purchases of mortgage-backed securities from Fannie Mae creates a conflict of interest because such contention "is too speculative and hypothetical to rebut the presumption" that the Ohio Funds are the most adequate plaintiffs; deeming the PSLRA's "professional plaintiff" restriction to be inapplicable to the Ohio Funds).