**In re VICURON PHARMACEUTICALS, INC. SECURITIES LITIGATION**

No. Civ.A. 04–2627.

United States District Court,
E.D. Pennsylvania.

Feb. 1, 2006.

Leslie Weaver, Lerach Coughlin Stoia Geller Rudman & Robbins, San Francisco, CA, Liana Larson, Nicholas J. Licato, Learch Coughlin Stoia Geller Rudman & Robbins, San Diego, CA, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, Robert Rothman, Samuel H. Rudman, Lerach Coughlin Stoia Geller Rudman & Robbins, Melville, NY, Deborah R. Gross, Law Offices Bernard M. Gross, PC, Philadelphia, PA, for Plaintiffs.

Anastasia Smith, David I. Hurwitz, Marc S. Williams, Seth Aronson, Tristan Sorah–Reyes, O'Melveny & Myers LLP, Los Ange-

les, CA, Brian J. Slipakoff, Jay A. Dubow, Robyn D. Levitan, Wolf Block Schorr and Solis–Cohen L.L.P., Philadelphia, PA, Gregory A. Markel, Cadwalader Wickersham & Taft LLP, New York, NY, Jeffrey W. Kilduff, O'Melveny & Myers, Washington, DC, Robin Winchester, Schiffrin & Barroway LLP, Evan J. Smith, Jason L. Brodsky, Brodsky & Smith, LLC, Bala Cynwyd, PA, Stacey A. Lara, Cadwalader, Wickersham & Taft, LLP, New York, NY, Sean M. Handler, Schiffrin & Barroway, LLP, Radnor, PA, for Defendants.

### MEMORANDUM

BARTLE, District Judge.

Plaintiffs have sued defendants Vicuron Pharmaceuticals Inc. ("Vicuron") and certain officers and directors in this consolidated putative class action for violations of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Before the court is the motion of Massachusetts State Carpenters Pension Fund ("MSCPF"), the Massachusetts State Guaranteed Annuity Fund ("MSGAF"), and the Greater Pennsylvania Carpenters Pension Fund ("GPCPF"), the named plaintiffs and proposed class representatives, for certification of a class comprising all purchasers of the securities of Vicuron between January 6, 2003 and May 24, 2004 and for appointment of class representatives and class counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### I.

MSCPF, MSGAF, and GPCPF, which together are denominated the "Institutional Investor Group," allege the following in support of their motion. *See In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508 (E.D.Pa. 2004). In January, 2003, Vicuron completed the third phase of its trial of anidulafungin, a drug for the treatment of esophageal candi-

diasis ("EC").[1] At this time the two most favored drugs for treatment of EC were fluconazole and Caspofungin. The third phase of the anidulafungin trial apparently did not produce the results for which Vicuron had hoped. Within two weeks of treatment with anidulafungin, more than one-third of patients relapsed while only one-tenth of the patients treated with fluconazole and Caspofungin suffered such relapses. Nevertheless, on March 17, 2003, Vicuron stated that the third phase of the trial demonstrated that its drug was as effective as fluconazole. Vicuron announced on April 28, 2003 that it had submitted a new drug application ("NDA") to the United States Food and Drug Administration ("FDA") for approval of anidulafungin as a treatment of EC. In an accompanying press release, Vicuron asserted that its drug was as effective as fluconazole and that its NDA so stated.

Plaintiffs maintain that these misrepresentations by the defendants during the proposed class period (January 6, 2003 to May 24, 2004) regarding the efficacy of anidulafungin resulted in the artificial inflation of the value of Vicuron's common stock to a high of $23.90 per share. According to the plaintiffs, this artificial increase allowed Vicuron to complete a merger with Biosearch Italia in March, 2003 by using 21.4 million shares of Vicuron stock to support the transaction. Vicuron was also able to complete a secondary offering of six million shares in July, 2003 for net proceeds of $83 million.

On May 24, 2004, Vicuron issued a press release acknowledging that the FDA had found its NDA for anidulafungin did not support the company's proposed labeling for the product. While the press release disclosed that the FDA had serious concerns about how quickly EC reappeared in patients treated with anidulafungin as compared with fluconazole, it also stated that Vicuron's NDA might eventually be approved with additional clinical data or studies. Upon the issuance of the press release, the value of Vicuron's

---

1. Esophageal candidiasis is an infection of the esophagus—the tube that connects the mouth to the stomach. It is caused by an overgrowth of Candida, a fungus that is normally found in the mouth, gastrointestinal tract and vagina, as well as on the skin. Candida is part of the normal "flora" of bacteria and fungi that live in or on the human body. Candida causes health problems only when there is an overgrowth.

stock sharply decreased to $13.04 per share, a loss of more than 40 percent from the previous day. The stock subsequently dropped to below $10.00 per share.

## II.

■ The decision whether or not to certify a class lies within the court's broad discretion exercised pursuant to Rule 23. *See Battle v. Commonwealth of Pennsylvania,* 629 F.2d 269 (3d Cir.1980); *see also Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147 (2d Cir.2001); *Gunnells v. Healthplan Services,* 348 F.3d 417 (4th Cir.2003). In order to obtain certification of a class for trial or settlement, the party seeking the certification must satisfy the four threshold requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition to these requirements, the party moving for class certification must demonstrate that the action is maintainable under Rule 23(b)(1), (2), or (3). *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir.2004). Under Rule 23(b)(3), on which plaintiffs rely, two requirements must be met. First, common questions must "predominate over any questions affecting only individual members." Second, class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* Failure to satisfy any requirement precludes certification of the class. *In Re LifeUSA Holding, Inc.,* 242 F.3d 136, 147 (3d Cir.2001). In this context, we are mindful of the fact that our Court of Appeals views the class action device as a "particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device." *Yang v. Odom,* 392 F.3d 97, 109 (3d Cir.2004) (internal citation omitted).

■ Vicuron does not dispute that the requirements under Rule 23(a) regarding numerosity, commonality, and typicality and those of predominance and superiority embodied in Rule 23(b)(3) have been met. Instead, Vicuron asserts that the MSCPF, MSGAF, and GPCPF would be inadequate class representatives under Rule 23(a)(4).[2] Despite the lack of opposition to most of the motion for class certification, we must rigorously scrutinize the record to determine whether all the prerequisites of Rule 23(a) are satisfied as well as the predominance and superiority requirements of Rule 23(b)(3). *See Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

■ To be certified, a class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Our Court of Appeals has held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001). Plaintiffs have demonstrated that there are so many members of the proposed class as to make their joinder impracticable, if not impossible. Though the exact size of the proposed class is not known at this point, more than 40 million shares of Vicuron's stock were outstanding between January, 2003 and May, 2004. During the proposed class period, Vicuron stock was listed and traded on the NASDAQ. Hundreds, if not thousands, of investors traded in Vicuron stock during that time. At a minimum, it is clear that the proposed class is very large and that its members could not be realistically joined in one action. Therefore, plaintiffs have satisfied the numerosity requirement.

---

2. Vicuron argues that the proposed class representatives cannot pursue their claim under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, because they purchased Vicuron stock in the secondary market and have not properly traced the purchase to the initial stock offering. *See Gustafson v. Alloyd Co.,* 513 U.S. 561, 578, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). We decline to address those assertions as they concern the mer-

its of the action and as such are not appropriately raised to challenge class certification. *See Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)) (citation omitted); *see also In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 135 (2d Cir.2001).

426

■ A party moving for class certification must also show that "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(2), (3). Our Court of Appeals has observed that while the elements of commonality and typicality are broadly defined and tend to merge, they are nevertheless distinct requirements. *Stewart,* 275 F.3d at 227. Often described as "easy commonality," the Court of Appeals has interpreted this prerequisite to require that the "proposed class members share at least one question of fact or law in common with each other." *Warfarin,* 391 F.3d at 527–28. Commonality does not demand that the claims and facts presented by all class members be identical. *Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 184 (3d Cir.2001). Rather, the commonality prerequisite is satisfied as long as the named plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Stewart,* 275 F.3d at 227. Typicality, on the other hand, "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Id.; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 183 (3d Cir.2001). Generally, "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir.1994) (citation omitted). Finally, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir. 1992).

Plaintiffs satisfy both the commonality and typicality prerequisites for class certification. They allegedly have suffered damages from the same course of fraudulent conduct on the part of Vicuron and share common factual questions. For example, the members of the proposed class must demonstrate that the press releases and other actions taken by Vicuron artificially inflated the trading price of the company's stock. Likewise, the class members share similar questions of law. They must prove that Vicuron's course of conduct violated the federal securities laws. In addition, the claims of the proposed class representatives are similar to those of the absent class members and are not uniquely vulnerable to any defenses. Each representative purchased Vicuron stock through or on the recommendation of their agents during the proposed class period. The fact that some class members undoubtedly purchased their shares directly while others, including the class representatives, used intermediaries does not make the claims of the representatives atypical. Plaintiffs argue they were injured by a common course of fraudulent conduct perpetrated by Vicuron that artificially inflated the value of the company's stock. Accordingly, the class members share a number of common questions of law and fact and the allegations of the proposed class representatives are typical of the claims of the absent class members.

■ We turn to the adequacy requirement under Rule 23(a)(4). Our Court of Appeals has stated that it encompasses two distinct inquiries designed to ensure that the interests of absentees are fully pursued. *See Barnes v. American Tobacco Co.,* 161 F.3d 127 (3d Cir.1998). First, we ask whether the "named plaintiffs' interests are sufficiently aligned with the absentees' and, second, we assess the qualifications of the counsel who seek to represent the class." *In re Community Bank of Northern Virginia,* 418 F.3d 277, 303 (3d Cir.2005) (internal citation omitted); *see also Warfarin,* 391 F.3d 516. Vicuron disputes that the MSCPF, MSGAF, and the GPCPF "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Vicuron maintains that MSCPF and MSGAF are unfit class representatives because they are "professional plaintiffs" barred from serving in this capacity by the PSLRA and because they played little or no role in the decision to purchase Vicuron stock. We find that these objections lack merit and that both the class counsel and the proposed class representatives will adequate-

ly protect the interests of absent class members.

■ Vicuron relies on one of the "lead plaintiff" restrictions imposed by the PSLRA. The provision reads:

Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period.

15 U.S.C. § 78u–4(a)(3)(B)(vi). Vicuron argues that this section bars the MSCPF and MSGAF from being class representatives because in the last three years the MSGAF and MSCPF have served or are serving as class representative in six and eight actions, respectively. Section 78u–4(a)(3)(B)(vi), however, deals only with the role of lead plaintiff. *See Vicuron,* 225 F.R.D. at 512–13. In our Order of October 7, 2004, we appointed them along with the GPCPF as lead plaintiff under the designation of the "Institutional Investor Group." *Id.*

■ To be a lead plaintiff requires a prima facie showing that the typicality and adequacy requirements are satisfied. *In re Cendant Corp. Litig.,* 264 F.3d 201, 263, 264 (3d Cir.2001). Moreover, the Conference Report on the PSLRA states "[t]he provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class." Conf. Rep. No. 104–369, at 34. The Second Circuit, interpreting the above-quoted language in the Conference Report and the PSLRA's silence, commented that "there is no reason to believe that the PSLRA altered the preexisting standard by which class representatives are evaluated under Rule 23." *Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 83 (2d Cir.2003). The fact that the MSCPF and MSGAF have been class representatives in as many prior class actions as they have does not preclude their filling that role in this case.

■ Vicuron further argues that the MSGAF, MSCPF, and GPCPF are unfit because they "abdicated" their investment decisions to money managers or other professionals and their control of the litigation to class counsel. Each is a pension fund managed by various administrators and a board of trustees. As many of these trustees and administrators do not have investing expertise, the funds have turned over investment decisions to professional money managers who operated under strict and detailed guidelines. The record reflects that these entities not only created elaborate guidelines to guide money managers hired to research, purchase, and sell pension investments but also actively monitored both the compliance of their money managers with the board-approved procedures and the progress of the investments. This level of oversight is both reasonable and necessary. Indeed, the trustees or directors of investment funds would likely violate their fiduciary duties if they invested the assets of the pensions without professional guidance. If an institutional investor cannot be a class representative simply because it turned over day-to-day investment decisions to professional money managers or advisors, few if any institutional investors could be class representatives in any securities action. Such a result is contrary to the intentions of Congress embodied in the PSLRA that institutional investors should oversee more securities actions. *See In re Neopharm, Inc. Sec. Litig.,* 225 F.R.D. 563, 566–67 (N.D.Ill.2004); *In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 282 (S.D.N.Y.2003). Therefore, the fact that institutional plaintiffs used money managers and investment advisors to purchase Vicuron stock does not suggest plaintiffs are inadequate to protect and pursue the interests of the class.

■ Further, the interests of the proposed class representatives are not antagonistic to the other members of the class. Their claims are typical of the class members' claims and are not uniquely vulnerable to the various defenses likely to be raised. Contrary to Vicuron's position, the record establishes that the proposed class representatives are knowledgeable of the factual and legal issues in this litigation. In their depositions the representatives of MSCPF,

MSGAF and GPCPF have demonstrated awareness of the facts and claims being pursued by the plaintiffs as well as the steps taken by class counsel. They have evidenced that they are willing and able to pursue vigorously all the claims of the class members.

■ With respect to the adequacy requirement, the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP and the law office of liaison counsel Marc S. Henzel are sufficiently experienced and qualified to conduct this securities fraud class action. The record reveals that each has participated in several successful securities fraud class actions in various federal courts throughout the United States.

Accordingly, we find that the MSCPF, MSGAF, GPCPF, and class counsel satisfy the adequacy requirement of Rule 23(a)(4).

To certify the proposed class, we must determine that it not only satisfies the four prerequisites of Rule 23(a) but also that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). While Vicuron does not object to the contentions of the class representatives that these requirements are satisfied, we must conduct a rigorous analysis and make our own determination based on the record. *See Falcon*, 457 U.S. at 161, 102 S.Ct. 2364.

■ The predominance requirement overlaps considerably with the commonality prerequisite in Rule 23(a)(2) and demands that the common issues of the class prevail over any issues affecting one or a small number of the class members. *See Warfarin*, 391 F.3d at 528. The inquiry "tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation" and properly "trains on the legal or factual questions that qualify each member's case as a genuine controversy ..." *Community Bank*, 418 F.3d at 309 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Our Court of Appeals has explained

that, though the predominance inquiry encompasses commonality, the former is "far more demanding." *LifeUSA*, 242 F.3d at 144. The Supreme Court, however, has explained that "[p]redominance is a test readily met in certain cases alleging ... securities fraud ..." *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231.

The predominance requirement is easily satisfied in this litigation. The factual and legal questions presented are common to all class members and overshadow any minor differences between them. Indeed, common to all class members are the crucial allegations that Vicuron made material misrepresentations regarding the effectiveness of anidulafungin and that those statements artificially inflated the value of the corporation's stock. The principal variance among the claims of the class members involves the calculation of damages. The determination of damages owed to each class member will involve a comparatively simple mathematical calculation once the class-wide questions regarding liability are resolved.

■ The final hurdle confronting the class is the question of superiority. Our Court of Appeals has noted that this requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Warfarin*, 391 F.3d at 533–34. In addition, Rule 23 itself lists four factors to guide our analysis:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). After a thorough review of the record within the framework provided by the rule, we conclude the proposed class meets the superiority standard.

Like many securities fraud class actions, the individual class members in this litigation

probably have little interest in pursuing their own claims because of what for many, if not most, is a relatively small loss. Aside from the question of damages as well as a few minor variances, each individual class member's claim is identical to that presented by the putative class. Simultaneous or seriatim litigation arising out of Vicuron's conduct during the class period regarding anidulafungin would be needlessly duplicative and an inefficient use of judicial resources. To avoid costly, redundant litigation in many federal districts, we believe this is the most appropriate forum for this litigation as it is where Vicuron has its principal place of business. We are unaware of any other actions commenced by or against members of the class and do not anticipate any unusual difficulties managing this class action. Therefore, the class action device is superior to available alternative avenues of adjudication for resolving this dispute.

### III.

The plaintiffs have demonstrated that the proposed class satisfies the four prerequisites of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3). Accordingly, we will certify a class of all purchasers of the securities of Vicuron between January 6, 2003 and May 24, 2004, and will appoint MSCPF, MSGAF and GPCPF as class representatives and the firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as class counsel.

### ORDER

AND NOW, this 1st day of February, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of the plaintiffs for class certification is GRANTED;

(2) the following Class is hereby certified: All persons who purchased the securities of Vicuron during the period January 6, 2003 through May 24, 2004, inclusive. Excluded from the Class are the defendants herein, members of the immediate families of the Individual Defendants, any entity in which any defendant has a con-

trolling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such party;

(3) the Massachusetts State Guaranteed Annuity Fund, the Massachusetts State Carpenters Pension Fund, and the Greater Pennsylvania Carpenters Pension Fund, collectively known as the Institutional Investor Group, are appointed as Class representatives; and

(4) the firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP is appointed as Class counsel.